**S.M.,\* Plaintiff–Appellee–Cross–Appellant,**

**v.**

**J.K., Defendant–Appellant–Cross–Appellee.**

Nos. 99–16184, 99–16960.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2001

Filed Aug. 27, 2001

---

\* All records in this matter have been sealed to protect the identity of the plaintiff in accordance with the policy expressed by Fed. R.Evid. 412(c)(2). The full names of the parties involved are not revealed in this opinion.

**916**

Gary M. Levitt, Honolulu, Hawaii, for the plaintiff-appellee-cross-appellant.

Richard E. Wilson, Simons, Wilson & Viola, Honolulu, Hawaii, for the plaintiff-appellee-cross-appellant.

Arthur B. Reinwald, Dennis E.W. O'Connor, Michael J. McGuigan, and Jason M. Tani, Reinwald, O'Connor & Marrack, Honolulu, Hawaii, for the defendant-appellant-cross-appellee.

Before: B. FLETCHER, CANBY, and PAEZ, Circuit Judges.

PAEZ, Circuit Judge:

This nearly decade-old case arises from Defendant J.K.'s attempted sexual assault of his housekeeper, Plaintiff S.M. The magistrate judge twice declared a mistrial before the jury was able to reach a verdict. During the course of the second trial, the judge granted judgment as a matter of law for Defendant on, inter alia, Plaintiff's punitive damages claim. At the conclusion of the third trial, the jury found for Plaintiff on her assault and battery and intentional infliction of emotional distress claims, and awarded damages.

In Appeal No. 99–16184, Defendant challenges three evidentiary rulings. Of particular significance is the district court's exclusion, under Federal Rule of Evidence 412, of evidence of Plaintiff's prior, consensual sexual activity. We hold that such evidence may be excluded as a means of sanctioning a party, in this case Defendant, for failing to comply with the procedural requirements of Rule 412 and that Plaintiff's own motion to admit evidence that she had been molested as a child does not open the door to admission of evidence of her voluntary sexual conduct. We have jurisdiction over this appeal under 28 U.S.C. § 1291, and we affirm in all respects. In Appeal No. 99–16960, Plaintiff cross-appeals from the ruling under Federal Rule of Civil Procedure 50(a) on her punitive damages claim. Because Plaintiff failed to file a timely notice of cross-appeal, we dismiss the cross-appeal.

FACTUAL BACKGROUND

Plaintiff was employed as a housekeeper in the two homes Defendant owned in Kauai, Hawaii. On September 8, 1992, Plaintiff and Defendant had breakfast together. Plaintiff alleged in her complaint that, while at breakfast, Defendant "offered to pay her $25,000 and also send her son to college if she would 'take care of his needs' when he came to Hawaii. He explained they were both consenting adults and his wife and her husband did not have to be told...." Plaintiff alleged that she refused.

Upon their return to the house, Plaintiff and Defendant went to Defendant's wife's dressing room to inspect a broken light fixture. Plaintiff alleged that Defendant then assaulted her by "touching her, grabbing her genitals, grabbing her breasts, attempting to kiss her, and forcefully putting her hands on his genitals while he moaned." Plaintiff alleged that, during the next two days, Defendant made obscene phone calls to her and came to her house, which he had not done during the previous years of employment.

Plaintiff alleged that, after the assault, "the family life and emotional well being of [Plaintiff, her husband, and their son]

[was] shattered.... [She] has been emotionally distressed as these incidents have brought back to her on a daily basis the violence and sex abuse of her childhood. It has also required her to use many kinds of medications, seek psychotherapy, and stop work of any type with others."

In her diversity suit against Defendant, Plaintiff sought damages for breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, violations of Hawaii civil rights statutes, defamation, assault and battery, and loss of consortium.[1] She also sought punitive damages. In addition to his other defenses, Defendant counterclaimed, alleging that Plaintiff "made a physical and sexual approach and contact with" him and that he "was embarrassed and emotionally distressed by this act." That counterclaim was voluntarily dismissed, and is not a subject of this appeal.

The parties consented to a jury trial before a magistrate judge. The case first went to trial on January 9, 1996. That trial ended in a mistrial three days later because the jury was able to hear the judge's confidential sidebar conversations with the attorneys. The case went to trial again on November 4, 1997. During that second trial, the magistrate judge granted judgment as a matter of law under Federal Rule of Civil Procedure 50(a) in favor of Defendant on every count in the complaint, including Plaintiff's request for punitive damages, except assault and battery and intentional infliction of emotional distress ("IIED"). When the jury deadlocked on the remaining counts, the court declared a mistrial.

Defendant moved for an entry of partial final judgment under Federal Rule of Civil Procedure 54(b) with regard to the court's ruling on the Rule 50(a) motion. The mo-

tion was denied. Plaintiff moved for reconsideration of the court's ruling with regard to the punitive damages claim, which the court also denied.

The assault and battery, and IIED claims went to jury trial for a final time on March 2, 1999. The jury returned a verdict for Plaintiff, finding that she was entitled to $200,000 in damages and that Defendant was responsible for 60 percent of Plaintiff's damages. He was ordered to pay $120,000. Defendant filed a notice of appeal on June 3, 1999. Plaintiff filed an untimely notice of cross-appeal on her punitive damages claim on September 8, 1999. See Fed. R.App. P. 4(a)(3) (notice of cross-appeal must be filed within 14 days of the notice of appeal).

## STANDARD OF REVIEW

■■■ Evidentiary rulings are reviewed for an abuse of discretion. See, e.g., Defenders of Wildlife v. Bernal, 204 F.3d 920, 927 (9th Cir.2000). To reverse on the basis of an erroneous evidentiary ruling, we must conclude not only that the district court abused its discretion, but also that the error was prejudicial. See, e.g., id. at 927–28. In reviewing the district court's exclusion of evidence as a sanction, we first engage in de novo review of whether the judge had the power to exclude the evidence. If the power exists, we review the imposition of the sanction for an abuse of discretion. Lewis v. Tele. Employees Credit Union, 87 F.3d 1537, 1556–57 (9th Cir.1996).

■■■ We determine our own jurisdiction de novo. Milne v. Hillblom, 165 F.3d 733, 735 (9th Cir.1999).

---

1. When the suit was initially filed, Plaintiff's husband and son were also named as plaintiffs, while Defendant's wife was named as a defendant. Plaintiff's husband and son were voluntarily dismissed from the suit. Plaintiff later voluntarily dismissed Defendant's wife.

## Discussion

### A. The Evidence Of Plaintiff's Prior Sexual History

Defendant first contends that the magistrate judge abused his discretion in excluding evidence that Plaintiff had engaged in an extramarital affair with a neighbor around the time of the assault. Prior to the second trial, Defendant had moved to introduce evidence of Plaintiff's sexual history under Federal Rule of Evidence 412, popularly known as the "Rape Shield" law. Rule 412 bars the admission of evidence offered to prove that the victim engaged in other sexual behavior or to prove the victim's sexual predisposition, Fed.R.Evid. 412(a)(1)-(2), unless the probative value outweighs the danger of harm to the victim and of unfair prejudice to any party, Fed.R.Evid. 412(b)(2).

In particular, Defendant sought to introduce evidence that Plaintiff had engaged in the extramarital affair, that she had been involved in a sexual relationship with a teacher while in high school, that she had propositioned a construction worker, and that she had been repeatedly sexually abused as a child. Plaintiff responded with a motion to exclude the evidence identified in Defendant's motion, as well as other evidence about Plaintiff's sexual history that had been revealed in discovery. In particular, Plaintiff argued that because Defendant's Rule 412 motion had not been filed under seal, as required by Federal Rule of Evidence 412(c)(2), all the evidence identified in that motion should be excluded. Further, Plaintiff argued that Defendant had not shown that the evidence's "probative value substantially outweigh[ed] the danger of harm to any victim and of unfair prejudice to any party." Fed. R.Evid. 412(b)(2). The court sanctioned Defendant for failing to file his motion under seal by denying his motion and granting Plaintiff's motion to exclude the evidence, "based upon the violation of the Rape Shield Law and public policy."

Defendant subsequently made "a brand new motion" to introduce Rule 412 evidence. Defendant wanted to introduce evidence of Plaintiff's extramarital affair to show that it was the affair, not the assault by Defendant, that had destroyed Plaintiff's marriage. Plaintiff herself then moved to introduce evidence of her childhood sexual abuse because her expert psychiatrist "considered these two events of [Plaintiff's] abused childhood as the basis for his [Post–Traumatic Stress Disorder] diagnosis." The court granted Plaintiff's motion, and invited Defendant to file a supplemental memorandum regarding any Rule 412 evidence that should now be admitted because Plaintiff had opened the door. Defendant responded, not with a legal argument, but with a list of incidents he wanted to introduce. A series of supplemental memoranda were exchanged.

The magistrate judge granted in part and denied in part Defendant's motion. The court excluded evidence of Plaintiff's sexual predisposition and voluntary sexual acts as per se barred by Rule 412, as well as the previously excluded evidence of the extramarital affair, on the ground that there was no need to reconsider the order excluding it as a sanction for violating Rule 412 procedures. However, with regard to evidence of prior sexual abuse, sexual assault, and rape, the court reserved judgment. It held that reconsideration of those aspects of the sanctions order was necessary as a result of Plaintiff's own motion to introduce evidence of prior sexual abuse, noting that, to be admitted, "those would have to be for purposes of counteracting [Plaintiff's expert psychiatrist's] proposed testimony."

Defendant argues that he was prejudiced by the exclusion of the evidence of the alleged affair because he was unable to

show that it was the affair, rather than the sexual assault, that traumatized Plaintiff and disrupted her marriage. We conclude, however, that the magistrate judge did not abuse his discretion in excluding evidence of Plaintiff's extramarital affair under Rule 412.

■■ As an initial matter, we hold that the magistrate judge's decision to exclude the evidence as a sanction for failing to comply with Rule 412 was proper. "A district court is vested with broad discretion to make ... evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this discretion lies the power ... to exclude testimony of witnesses whose use at trial is in bad faith or would unfairly prejudice an opposing party." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.1980) (citations omitted); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.1992). In this case, Defendant's failure to file his motion under seal was "a flagrant violation," *Campbell*, 619 F.2d at 27, of Rule 412(c)(2), jeopardizing the fairness of the trial and risking prejudice to Plaintiff. Even though the evidence was ultimately excluded, Plaintiff may have suffered prejudice from the public airing of the allegation of the extramarital affair. *See* Fed.R.Evid. 412 adv. comm. note ("The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details...."). We therefore agree with the holding of the district court in *Sheffield v. Hilltop Sand & Gravel Co.*, 895 F.Supp. 105, 109 (E.D.Va.1995) that "[b]y ignoring the ex-

press requirements of Rule 412(c), the defendant frustrate[s] Rule 412's objectives and presumptively inflict[s] harm upon the plaintiff." *See also Michigan v. Lucas*, 500 U.S. 145, 153, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) ("Failure to comply with th[e] requirement[s] [of a rape shield law] may in some cases justify even the severe sanction of preclusion.").[2] Because Defendant undermined the purpose of Rule 412 by openly filing a laundry list of Plaintiff's alleged sexual indiscretions, the magistrate judge did not abuse his discretion by excluding the evidence.

■■ Nevertheless, we also agree with the *Sheffield* court that a decision sanctioning the defendant for noncompliance with Rule 412 should be reconsidered if the plaintiff "opens the door" to the evidence. *Id.; see also Blackmon v. Buckner*, 932 F.Supp. 1126, 1127 (S.D.Ind.1996) ("[R]ulings that certain items of evidence are not admissible must remain conditional because the plaintiff could open the door at trial to make some of this evidence admissible."). We have not previously decided explicitly if history of prior sexual abuse or instances of rape are covered by Rule 412. However, in *United States v. Cardinal*, 782 F.2d 34, 36 (6th Cir.1986), we observed that a district court's exclusion of a prior, withdrawn, rape accusation "demonstrated a sensitivity to the policy supporting the rape-shield rule." We recognize that excluding prior instances of sexual assault, in addition to prior accusations, serves Rule 412's "'principal purpose[:] ... to protect rape victims from the degrading and embarrassing disclosure of intimate details about their private lives.'" *Id.* (quoting 124 Cong. Rec. H11944 (daily ed. Oct. 10,

---

**2.** Our decision in *LaJoie v. Thompson*, 217 F.3d 663 (9th Cir.2000) (as amended), is not to the contrary. In *LaJoie* we held that the petitioner's Sixth Amendment rights were violated when evidence of the victim's sexual history was excluded from a rape trial be-

cause of the petitioner's failure to give the 15-day notice required under the Oregon rape shield statute. The instant case is civil, rather than criminal, so the Sixth Amendment protections do not apply.

1978) (statement of Rep. Mann)). *See also* Andrea A. Curcio, *Rule 412 Laid Bare*, 67 U. Cin. L. Rev. 125, 155–56 (1998) ("There is nothing more intimate than childhood sexual abuse, and nothing as potentially devastating to a plaintiff than to have that abuse publicly exposed."). Had Defendant attempted to introduce evidence that Plaintiff had previously been assaulted, it would have been subject to Rule 412. By introducing the evidence herself, Plaintiff opened the door to the admission of further related evidence.

The magistrate judge was required to reconsider his sanction order, which he did. We hold that he did not abuse his discretion in refusing to admit evidence of the extramarital affair. Plaintiff did not open the door to more than rebuttal evidence that she had been assaulted previously. The court appropriately deemed the door open only to the extent of evidence concerning past rape and abuse, striking "an acceptable balance between the danger of undue prejudice and the need to present the jury with relevant evidence...." *Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 856 (1st Cir. 1998) (holding that the district court did not abuse its discretion in excluding evidence of the plaintiff's promiscuity or her boyfriend's marital status, but admitting evidence that her relationship with her boyfriend had caused her to be distracted at work).

Because we find that the magistrate judge did not abuse his discretion in sanctioning the defendant by excluding the Rule 412 evidence, we do not address Defendant's argument that the probative value of the evidence would outweigh the risk of harm and prejudice if introduced to show that Defendant was not the cause of Plaintiff's injuries. *Cf. United States v. Bear Stops*, 997 F.2d 451, 454–55 (8th Cir. 1993) (holding that evidence that the victim had been previously molested was admissible to show that the defendant was not the only person who might have caused the victim to "exhibit[ ] the behavioral manifestations of a sexually abused child"); *Judd v. Rodman*, 105 F.3d 1339, 1343 (11th Cir.1997) ("[E]vidence of prior sexual relationships ... was highly relevant to Rodman's liability" for the plaintiff's genital herpes.).[3]

## B. THE TESTIMONY OF DR. MCKENNA WITH REGARD TO HIS DIAGNOSIS OF PTSD

Next, we turn to Defendant's contention that the magistrate judge abused his discretion in admitting the testimony of Plaintiff's expert psychiatrist, Dr. Gerald McKenna, with regard to his diagnosis of Plaintiff as suffering from Post–Traumatic Stress Disorder ("PTSD"). Defendant moved to exclude the testimony of Dr. McKenna, or, in the alternative, for a hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to test the reliability of Dr. McKenna's opinion. Defendant made two arguments: that Dr. McKenna's testimony could not be used to bolster Plaintiff's assertions that she had been assaulted; and that Dr. McKenna's diagnosis was unreliable because he did not rely on the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM"). At the hearing, the magistrate judge found that the revisions in the most recent version of the DSM "supported the doctor's viewpoint, although not completely." The judge then allowed the doctor to testify because "the areas or the objections raised by the defendant go to weight not admissi-

---

3. Evidence showing that "a person other than the accused was the source of semen, injury or other physical evidence" is generally admissible in a criminal case. Fed.R.Evid. 412(b)(1)(A). But in a civil case, the probative value of that evidence must outweigh the risk of harm and prejudice. *Id.* at 412(b)(2).

bility." Prior to the final trial, Defendant made a second motion to exclude McKenna's testimony. Dr. McKenna was allowed to testify as long as he did not express a legal opinion as to whether Plaintiff was actually sexually assaulted or express an opinion as to her veracity.

Defendant does not claim that testimony regarding PTSD should always be excluded.[4] Rather, he argues that Dr. McKenna's diagnosis and description of PTSD should have been excluded because the doctor did not rely strictly upon the revised third edition of the DSM ("DSM–III–R") in reaching that diagnosis. We hold that the magistrate judge did not abuse his discretion in permitting this testimony.

Dr. McKenna first diagnosed Plaintiff with PTSD in 1992, when psychiatrists were still relying on the DSM–III–R, published in 1987. Dr. McKenna acknowledged that in diagnosing Plaintiff he was relying on his own "understanding" of the disorder, in addition to the DSM–III–criteria. In particular, while the DSM–III–R required a "distressing event ... **outside** the range of usual human experience" to trigger PTSD, American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 247 (3rd ed. rev. 1987) (emphasis added), Dr. McKenna testified

that the triggering event could be less severe.[5] Defendant contends that this "variance" from the DSM–III–R renders Dr. McKenna's testimony inadmissible.

Under *Daubert*, trial courts have broad discretion to admit expert testimony. See *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).[6] A court may admit somewhat questionable testimony if it falls within "the range where experts might reasonably differ, and where the jury must decide among the conflicting views...." *Id.* (citing *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786). Dr. McKenna's testimony falls within that range. As commentators have repeatedly observed, "mental health professionals involved in everyday practice may disagree more than half the time even on major diagnostic categories such as schizophrenia and organic brain syndrome." Christopher Slobogin, *Doubts About* Daubert: *Psychiatrict Anecdata as a Case Study*, 57 Wash. & Lee L.Rev. 919, 920 (2000). Therefore, a variance from the DSM's diagnostic criteria will not automatically result in an unreliable diagnosis. Instead, after *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of at-

---

4. Other courts have permitted testimony regarding PTSD. *See Isely v. Capuchin Province*, 877 F.Supp. 1055, 1067 (E.D.Mich.1995) (holding that experts "may testify as to [their] theories and opinions concerning PTSD ... [and] as to whether [the patient's] behavior is consistent with someone who is suffering" from PTSD).

5. We suspect that Defendant's assault on Plaintiff might qualify as a triggering event even under the DSM–III–R, which describes usual human experience as including "simple bereavement, chronic illness, business losses, and marital conflict," American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 247 (3rd ed. rev.1987),

and suggests that rape and assault might be triggers. *Id.* at 248.

6. *Daubert* established several factors trial courts are to consider in evaluating expert testimony: whether the expert's theory "can be (and has been) tested; whether it 'has been subjected to peer review and publication'"; whether there is a high error rate or controlling standards; and whether the theory enjoys "general acceptance." 509 U.S. at 593–94, 113 S.Ct. 2786. The Supreme Court later cautioned that *"Daubert'*s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141, 119 S.Ct. 1167.

tacking shaky but admissible evidence." 509 U.S. at 596, 113 S.Ct. 2786.[7] Defendant had the opportunity to cross-examine Dr. McKenna about the differences between his diagnosis and the two relevant versions of the DSM and to explore the possibility that the alleged assault was not severe enough to trigger PTSD.

Most importantly, the fourth edition of the DSM ("DSM–IV") has omitted the requirement that the triggering event be outside the range of normal human experience. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 424 (4th ed.1994). Reflecting the general trend in his field, Dr. McKenna's diagnostic criteria apparently now enjoy general acceptance. Therefore, the magistrate judge did not abuse his discretion in admitting Dr. McKenna's testimony.

## C. The Deposition Testimony Of The Defendant's Wife

Finally, Defendant contends that portions of his wife's deposition testimony that were introduced at trial should have been stricken from the record. We affirm the district court on this issue because Defendant has failed to adequately articulate an argument for reversal on appeal. *See* Fed. R.App. P. 28(a)(9); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir.1994) ("The basis of this argument . . . is difficult to decipher. . . . We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim. . . .").

## D. The Cross-Appeal

Plaintiff cross-appeals from the district court's order granting Defendant judgment as a matter of law on her punitive damages claim. We decline to exercise our discretion to hear Plaintiff's untimely cross-appeal.

Plaintiff contends that her Civil Appeals Docketing Statement ("CADS"), which was filed within the 14 days allowed by Federal Rule of Appellate Procedure 4(a)(3) for filing of a notice of cross-appeal, is the "functional equivalent" of a notice of cross-appeal. We have held that a CADS is not a sufficient notice of appeal if the appellant is represented by counsel. *Munden v. Ultra–Alaska Assocs.*, 849 F.2d 383, 388 (9th Cir.1988). Subsequently, the Supreme Court has explained that we are to "liberally construe" the requirements of a notice of appeal in determining if another document is the functional equivalent. *Smith v. Barry*, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992). Although the petitioner in *Smith* was pro se, the Tenth Circuit has held that "[t]he principles outlined in *Smith v. Barry* . . . are not confined to the filings of pro se appellants." *Rodgers v. Wyoming Att'y Gen.*, 205 F.3d 1201, 1205 (10th Cir.2000), *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Nevertheless, Plaintiff has provided us with no reason that we should exercise our discretion to treat her CADS as a notice of cross-appeal. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316, 108 S.Ct. 2405, 101

---

7. Defendant relies on the district court decision in *United States v. Scholl*, 959 F.Supp. 1189 (D.Ariz.1997), *aff'd* 166 F.3d 964 (1999) (as amended), for the proposition that "mental disorders that are not specifically described in the DSM–IV generally will not meet the *Daubert* scientific validity test. . . ." In *Scholl*, we did not rely on *Daubert*, but instead held that the testimony had been properly excluded because it would have been irrelevant, misleading, and confusing. 166 F.3d at 971. We decline to adopt the *Scholl* district court's reasoning now, as it is contrary to *Daubert*'s standard for admissibility. *See also Mancuso v. Consolidated Edison Co. of N.Y., Inc.*, 967 F.Supp. 1437, 1456 (S.D.N.Y.1997) ("ConEd has cited no cases in which a qualified psychiatrist was excluded from testifying because she did not follow the DSM–IV.").

L.Ed.2d 285 (1988) ("a court may ... find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires"); *Munden,* 849 F.2d at 388 ("We will not extend any leniency that is not demanded....").

At oral argument, relying on *Mendocino Environ. Ctr. v. Mendocino County,* 192 F.3d 1283, 1298 (9th Cir.1999), Plaintiff argued in the alternative that a notice of cross-appeal is not a jurisdictional requirement. While it is true that the requirement to file a notice of cross-appeal "can be waived at the court's discretion," *id.,* Plaintiff has again not given us any reason to depart from the general rule that we will not hear a challenge to a district court decision if a notice of cross-appeal is not filed. *See, e.g., Gulliford v. Pierce County,* 136 F.3d 1345, 1351 (9th Cir.1998); *Spurlock v. Fed. Bureau of Investigation,* 69 F.3d 1010, 1018 (9th Cir. 1995); *Turpen v. City of Corvallis,* 26 F.3d 978, 980 (9th Cir.1994).

In *Mendocino,* the district court made two rulings, one in favor of the plaintiffs and one in favor of the defendants. The defendants appealed the ruling in favor of the plaintiffs. But it was not until the defendants filed their brief with this court, long after the 14–day period for filing a notice of cross-appeal, and it became clear that the defendants were "rest[ing] their argument on the alleged inconsistency between the two rulings ..., that the appellees felt compelled to challenge" the ruling in favor of the defendants. 192 F.3d at 1299. Therefore, we decided to hear the cross-appeal because the failure to file a notice of cross-appeal was "understandable." *Id.; see also Bryant v. Tech. Research Co.,* 654 F.2d 1337, 1341 (9th Cir. 1981) (deciding to hear cross-appeal even though no notice had been filed because "[a]lthough Eastman initially had no reason to appeal the [favorable] judgments

dismissing Ashland, Columbia, and Custom ..., TLC's appeal raised the possibility of reversal"). Moreover, *Mendocino* involved the unique situation of an interlocutory appeal, so it would not have been at all obvious to the plaintiffs that they could appeal; and the appeal and cross-appeal were "inextricably interrelated." 192 F.3d at 1300. In this case, by contrast, Plaintiff knew within the time period for filing her notice of cross-appeal that she intended to appeal the court's punitive damages ruling. Furthermore, her cross-appeal is essentially unrelated to the issues raised by Defendant in his appeal. Plaintiff could have filed her notice of cross-appeal on time. There is no reason to allow Plaintiff to bring her cross-appeal without filing the requisite notice.

Therefore, because the magistrate judge did not abuse his discretion in making the challenged evidentiary rulings, in Appeal No. 99–16184, the district court's rulings are AFFIRMED. Because Plaintiff failed to file a timely notice of cross-appeal, Appeal No. 99–16960 is DISMISSED. Defendant shall bear all costs on appeal.