ISLAND NAVIGATION CO., a California Corporation, Plaintiff–counter–defendant–Appellant,

v.

M/V VIKING SERENADE, Its Tackel, Apparel and Appurtenances, In Rem; Defendant–Appellee,

Royal Caribbean International, Defendant–counter–claimant–Appellee.

No. 01–55052.
D.C. No. CV 97–3519 CAS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2002.

Decided May 16, 2002.

Before WARDLAW and W. FLETCHER, Circuit Judges, and WHYTE,* District Judge.

### MEMORANDUM **

Island Navigation appeals from the judgment of the district court. Island Navigation asserts several grounds for appeal, challenging the district court's setting the case for trial on short notice, challenging the district court's interpretation of the tariff schedule, and challenging the district court's evidentiary rulings.

Island Navigation first contends that the district court abused its discretion by setting the case for trial on two business days' notice. Under the circumstances, there was no abuse of discretion. The record demonstrates that the case had been set for pretrial conference and for trial numerous times throughout the several years of the litigation, following ordinary procedures, but those dates had been continued as the case progressed. By the time trial was to be finally set, the court had already granted judgment against Island Navigation on its claims and had determined which tariff rate applied. In addition, the parties had already agreed upon much of the evidence, leaving only one factual issue to be determined--the average number of Island Navigation's boats which serviced Royal Caribbean's cruise ship. On this issue, the parties had already stated their positions and submitted their evidence. Moreover, Island Navigation has

* The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

failed to establish how it suffered any actual prejudice. The pretrial rules are designed to avoid surprise at trial. *Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591, 594 (2d Cir.1964). There was no surprise here. Although the notice of trial was short, it was not an abuse of discretion.

■ Island Navigation's second argument is that the district court erred in interpreting the tariff schedule and determining that the " 'on-call' charter" rate, rather than the Area 2 rate, applied. Island Navigation contends that the district court erred in finding that the " 'on-call' charter" tariff applied because in order for the "charter" rate to be applied, the service must have been "exclusive" and the evidence at trial did not support a finding of "exclusivity." The evidence before the trial court was mixed, however, and there was evidence before the court that when Island Navigation was transporting Royal Caribbean's passengers, the service was exclusive to Royal Caribbean, even if the boats were free to perform services for others after delivering the passengers. The trial court did not err in finding that the "charter" criteria were satisfied.

There was also no redundancy created by interpreting the " 'on-call' charter" rate to apply to services provided when the cruise ship was anchored within the west harbor, Area 2. On its face, the on-call charter rate applies to "all areas."

■ Finally, Royal Caribbean's lack of knowledge of the tariff schedule and corresponding lack of detrimental reliance is irrelevant. *See Hischenmoeller v. National Ice and Cold Storage Co.*, 46 Cal.2d 318, 324–25, 294 P.2d 433 (1956) (actual knowledge of the rate schedule by the customer is legally inconsequential to its application).

Accordingly, Island Navigation has failed to establish that the selection of the

" 'on-call' charter" rate was erroneous. Although the tariff schedule is not a model of clarity, other sections of the tariff schedule support the determination that the " 'on-call' charter" rate applied to the services Island Navigation provided. Section 11 of the tariff addresses "water taxi shoreboat" services. Section 11 sets forth that the company "is authorized to operate as a vessel common carrier to transport passengers and their hand baggage in a 'water taxi shoreboat service' between vessels and between vessels and shorepoints ... subject to" certain conditions. The third condition is that "[s]ervice *shall be operated on an 'on-call' and 'charter' basis.*" Section 11(c) (emphasis added). The terms "on-call" and "charter" are then defined:

d. The term "on-call" as used herein refers to service which is authorized to be rendered dependent on the demands of passengers....

e. The term "charter" service, as used herein refers to service in which the vessel is engaged, for a specified charge, by a person or group of persons for the exclusive use of said person or group of persons....

*Id.* Thus, Island Navigation was only authorized to perform water taxi services on an "on-call" and "charter" basis, and the only rate listed in the schedule which corresponds to such service is the sixth rate: "On–Call" Charter. Accordingly, the district court did not err in determining that the rate to be applied to the services Island Navigation supplied to Royal Caribbean was the On–Call Charter service rate.

■ Island Navigation's third contention on appeal is that the district court erred in applying the "on-call" charter rate, contending that both the language of the tariff schedule and the Public Utilities Code require the tariff to be applied to

one-way trips between points. Island Navigation's arguments are unpersuasive and would render the tariff schedule absurd and unreasonable.

First, although there is some ambiguity in the document, the tariff schedule cannot be reasonably interpreted to set forth only one-way fares. The title page of the tariff schedule notes that the document is "[n]aming *one-way fares* between vessels, points or places on or near Santa Catalina Island, California and principally in the area of AVALON HARBOR." (emphasis added). This language suggests that the rates recited later in the document are one-way fares. Nevertheless, the rate schedule as a whole sets forth rates which on their face are not limited to one-way fares. Although the first five rates list fares on a per-person basis within certain areas, the sixth rate category sets forth "'on-call' charter" service on an hourly basis and the seventh rate sets forth a single annual pass rate for unlimited trips within Areas 1 and 2. These latter two rates on their face suggest that a different fare structure applies in these categories than in the per-person, per-trip rates set forth for service in Areas 1 through 5. The most reasonable interpretation of the language is that the hourly rate applies to services by the hour, and that the annual pass rate applies for a year's worth of service, regardless of the number of trips taken within that time frame.

■ Like contracts, tariffs are to be construed to give meaning to each term. *In re Southern California Utility Power Pool,* 60 CPUC 2d 462, 1995 WL 464104 (1995). Island Navigation's proposed interpretation would render portions of the Tariff unreasonable and absurd. If Island Navigation's argument were correct and the reference to "one-way fares" on the title page meant that all recited fares were one-way, then the annual pass rate would

result in a fare of $500 per trip, rather than per year. A similar absurdity results if the "'on-call' charter" rate is to be interpreted as setting forth one-way per trip fares. The plain meaning of the "'on-call' charter" rate is that the service is provided on an hourly basis, not on a one-way fare basis.

■ Similarly, the California Public Utilities Code sections cited by Island Navigation do not require the recited fare structures to be one-way, point-to-point fares. California Public Utilities Code Sections 486(a) and 1007 require a common carrier to obtain a certificate before operating and to file with the commission a tariff schedule. Nothing within the sections prohibit a published tariff which provides for an hourly rate for unlimited service. Island Navigation cites *Harbor Carriers, Inc.,* 72 CPUC 518, 1971 WL 26520 (1971), as an example confirming that a carrier who transports passengers from shore to vessel is a common carrier subject to PUC regulation. Notably, however, *Harbor Carriers* itself involved a common carrier whose published tariff rate allowed it to charge for services on a quarter-hour basis. 1971 WL 26520 at *2. Thus, the case does not support Island Navigation's argument that the PUC regulations require a per-person, per-trip rate fare.

It would be erroneous to conclude from this statute, as does Island Navigation, that the public utilities code *only* allows point-to-point tariffs, and prohibits hourly rates for unlimited service tariffs. Simply put, the hourly rate for unlimited service is not inconsistent with, and does not violate, Section 486(a). Providing point-to-point transportation service means that the service provider is subject to regulation by the PUC. The code sections cited by Island Navigation do not themselves require any

particular interpretation of the tariff language.

█ Island Navigation's final argument on appeal is that the district court made evidentiary errors in admitting Royal Caribbean's summary charts which it argues were based on unauthenticated documents. To reverse on the basis of an erroneous evidentiary ruling, this court must conclude not only that the district court abused its discretion but also that the error was prejudicial. *S.M. v. J.K.*, 262 F.3d 914, 917 (9th Cir.2001). Island Navigation has failed to meet its burden on this issue. The summary chart admitted into evidence was offered on counsel's representation that the information was derived from evidence already submitted to the court, specifically, Island Navigation's employee time cards and employee declarations. The underlying employee time cards had previously been admitted into evidence. The time cards indicate which boat was serviced, whether Royal Caribbean's, Carnival Cruise Lines', or mixed, although the cards were not prepared for the purpose of tracking which ship was serviced. In addition, the affidavits of Island Navigation's employees authenticating the time cards were produced in discovery and offered into evidence.

█ Even if the district court had abused its discretion in admitting the chart as evidence, the error was not prejudicial. The other evidence in the record, including Island Navigation's admissions, was sufficient to support the court's determination that five shoreboats were used, and hence was sufficient to establish Island Navigation's liability for the overcharges. Accordingly, Island Navigation has failed to establish that the district court abused its discretion in admitting the chart and supporting documentation and has failed to

demonstrate that it has been prejudiced by the admission of the evidence.

AFFIRMED.