**A.W., Plaintiff,**

v.

**I.B. CORP., Defendant.**

**No. CIV. 03–228–P–C**[1].

United States District Court,
D. Maine.

July 2, 2004.

---

1. In view of the sensitive nature of the matters discussed herein and the fact that this opinion will be published on the court's web site, and in keeping with the spirit of Federal Rule of Evidence 412, I have used shortened or descriptive names of the parties and other persons and entities.

## MEMORANDUM DECISION AND ORDER ON DISCOVERY DISPUTE

DAVID M. COHEN, United States Magistrate Judge.

Pursuant to Local Rule 26, in the wake of a deadlock leading to suspension of plaintiff A.W.'s June 1, 2004 deposition, A.W. and defendant I.B. Corp. ("IBC") brought the instant discovery dispute to the court's attention. I held a hearing in this matter on June 16, 2004 by telephone and on June 30, 2004 in the courtroom. Between the two hearing dates the parties submitted, with leave of court, letter memoranda (respectively, "Plaintiff's Memorandum" and "Defendant's Memorandum") and other materials, including a transcript of A.W.'s deposition ("A.W.Dep."), a copy of a psychiatrist's letter ("Psychiatrist's Letter") and a copy of the psychiatrist's Comprehensive Psychiatric Evaluation, Summary of Examination Notes. After hearing and with the benefit of the written materials, which I have thoroughly reviewed, I now grant in part and deny in part both parties' requests.

### I. Factual Context

A.W., a male, brings a single-count hostile-environment sexual-harassment claim pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. *See* Plaintiff's First Amended Complaint for Hostile Work Environment; Demand for Jury Trial (Docket No. 12) ¶¶ 18–23. He alleges, *inter alia*, that (i) he began employment with IBC in 2001 as an on-call employee, (ii) beginning in 2001 and continuing until February 2002, P.T., a male co-worker, began to create a hostile work environment for him by engaging in conduct that included grabbing A.W.'s buttocks or groin, rubbing his groin into A.W.'s buttocks, flashing A.W. by dropping his pants and on one occasion shoving his hands into A.W.'s shorts and grabbing his penis and buttocks. *See id.* ¶¶ 7–13. He further asserts, in relevant part, that the hostile environment caused him to experience severe emotional distress and to seek professional counseling to treat the symptoms of that distress. *See id.* ¶ 22.

During A.W.'s deposition, his counsel instructed him on a number of occasions not to answer questions from defendant's counsel bearing on his sexual history. *See, e.g.,* A.W.Dep. at 104–06, 182–84. Defendant's counsel complains that plaintiff's counsel improperly instructed his client not to answer questions. *See* Defendant's Memorandum at 1. He asks the court to compel A.W. to respond to certain enumerated questions and also requests that appropriate enlargements of the discovery and motion deadlines be granted. *See id.* at 2–5. Plaintiff's counsel asks the court to enter an order prohibiting questions concerning A.W.'s sexual history with persons other than P.T. and precluding defendant's counsel from arguing with the witness, asking the same questions more than once and covering material that has been covered in the first deposition. *See* Plaintiff's Memorandum at 3. He also asks that the court limit the duration of the remainder of A.W.'s deposition to thirty minutes. *See id.*

## II. Analysis

### A. Rulings at Hearing

I addressed some of the parties' requests at the conclusion of the hearing held on June 30, 2004, ruling that:

1. Plaintiff's counsel did not transgress Federal Rule of Civil Procedure 30(d)(1), which permits a person to "instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Although plaintiff's counsel makes no showing of privilege as a basis for his instructions that his client not answer certain questions, the deposition transcript indicates that he did ultimately recess the deposition to seek guidance from the court. *See* A.W.Dep. at 200–01. He permissibly waited until A.W.'s deposition had gone on for some time before recessing to present a Rule 30(d)(4) motion. He was not obliged to stop the deposition at the earliest opportunity; indeed, had he done so, I would have lacked the full exposition of the disputed issues that the A.W. deposition transcript provides.

2. With respect to plaintiff's counsel's requests to prohibit opposing counsel from (i) arguing with the witness, (ii) asking the same question more than once, (iii) covering material already covered in the first deposition or (iv) taking more than thirty minutes to complete the deposition, my reading of the transcript indicates that both counsel allowed themselves to get hot under the collar and certainly could have and should have dealt with each other with more civility than is evident from the transcript. I expect that as counsel go forward they will redouble their efforts to deal with each other in a professional manner. I see no need for entry of formal orders and on that basis decline plaintiff's counsel's requests.

3. The discovery deadline in this case is enlarged to July 23, 2004, and the motion deadline to July 30, 2004.

### B. Fed.R.Civ.P. 26; Fed.R.Evid. 412

I turn to the discovery disputes that form the heart of this matter. These disputes implicate two portions of Federal Rule of Civil Procedure 26, which provides in relevant part:

(b) **Discovery Scope and Limits**. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

**(1) In General.** Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

\* \* \* \* \* \*

**(c) Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

Fed.R.Civ.P. 26.

A.W. claims that he was subjected to sexual harassment in the form of a hostile work environment. To prove such a claim, a plaintiff must establish

(1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 395 (1st Cir.2002) (citation and internal quotation marks omitted).

While Federal Rule of Civil Procedure 26 controls, Federal Rule of Evidence 412 (the so-called "Rape Shield" law, *see S.M. v. J.K.,* 262 F.3d 914, 918 (9th Cir.2001), *amended by* 315 F.3d 1058 (9th Cir.2003)) also *informs* the instant dispute over the boundaries of proper inquiry into an alleged sexual-harassment victim's sexual conduct and history. *See, e.g.,* Fed.R.Evid. 412 Advisory Committee notes to 1994 amendments (although discovery of victim's past sexual conduct or predisposition in civil cases continues to be governed by Fed.R.Civ.P. 26, "[i]n order not to undermine the rationale of Rule 412 ... courts should enter appropriate orders pursuant to Fed.R.Civ.P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-workplace conduct will usually be irrelevant."); *Gibbons v. Food Lion, Inc.,* No. 98–1197–CIV–T–23F, 1999 WL 33226474 (M.D.Fla. Feb. 19, 1999), at \*2 (aligning with majority view that, for policy reasons, Rule 412 informs discovery decisionmaking).

Rule 412 provides, in relevant part:

**(a) Evidence generally inadmissible.—** The following evidence is not admissible in any civil ... proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):

(1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

(2) Evidence offered to prove any alleged victim's sexual predisposition.

**(b) Exceptions.—**

\* \* \* \* \* \*

(2) In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of an alleged victim's reputation is admissible

only if it has been placed in controversy by the alleged victim.

Fed.R.Evid. 412.

As the commentary to the rule makes clear, the civil-case balancing test "differs in three respects from the general rule governing admissibility set forth in Rule 403. First, it Reverses [sic] the usual procedure spelled out in Rule 403 by shifting the burden to the proponent to demonstrate admissibility rather than making the opponent justify exclusion of the evidence. Second, the standard expressed in subdivision (b)(2) is more stringent than in the original rule; it raises the threshold for admission by requiring that the probative value of the evidence *substantially* outweigh the specified dangers. Finally, the Rule 412 test puts 'harm to the victim' on the scale in addition to prejudice to the parties." Fed.R.Evid. 412 Advisory Committee notes to 1994 amendments (emphasis in original); *see also, e.g., Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 856 (1st Cir.1998) ("Fed.R.Evid. 412 was designed to prevent misuse of a complainant's sexual history in cases involving 'alleged sexual misconduct.' ... Rule 412 ... reverses the usual approach of the Federal Rules of Evidence on admissibility by requiring that the evidence's probative value 'substantially outweigh' its prejudicial effect.") (citation omitted).

The Rule 412 balancing test, including its burden-shifting component, has been imported into the discovery context. *See, e.g., Barta v. City & County of Honolulu*, 169 F.R.D. 132, 135 (D.Haw.1996) ("Although Rule 412 is a rule controlling the admissibility of evidence rather than its discoverability, Rule 412 must inform the proper scope of discovery in this case.... In recognition of the policy rationale for Rule 412, the court must impose certain restrictions on discovery to preclude inquiry into areas which will clearly fail to satisfy the balancing test of Rule 412(b)(2), although the trial judge will render the decisions on what evidence is ultimately admitted.").

Defendant's counsel originally raised discovery issues regarding a list of seven questions. *See* Defendant's Memorandum at 2–5. At the June 30 hearing, he agreed with plaintiff's counsel that there was no issue with respect to Question 1 (**"And I'm just asking if, for example, when you worked at [another job], if you were open about your homosexuality?"**) inasmuch as A.W. had answered it. At oral argument, counsel debated whether A.W. had also answered Questions 2–3. I find that he did. The questions probed the extent of A.W.'s memory regarding a comment he had made at another workplace in 1995 for which he was counseled:

2. **"You don't remember that it was a sexual statement [that you made to construction workers at a previous job]?"**

3. **"And I want to find out beyond that what you remember."**

*Id.* at 2–3. Question 2 essentially was a reiteration of a question defendant's counsel had just posed. Just prior to asking Question 2, he had asked: "And it [the statement] was sexual in nature?" A.W.Dep. at 97. A.W. had responded: "I don't remember." *Id.* Thus, while A.W. did not respond to Question 2, he had already testified that he did not remember whether the statement was sexual. Similarly, although A.W. gave an evasive response to Question 3, "That's all at this point that I'm willing to state," he ultimately did answer the question after his counsel directed him to do so, stating: "There was also the director of nursing and the administrator that also were counseled at that present time." *Id.* at 98. Nonetheless, defendant's counsel further complained at oral argument that his opponent cut him off from completing a line of followup questions as to whether A.W. had understood the need to answer questions truthfully, fully and to the extent he had exhausted his present memory. I agree, *see id.* at 99–100, and hence will permit defendant's counsel to finish that line of questioning.

The following questions remain:

4. **"I'm just asking you about events from 1995 in which you were counseled. And I'm asking have you ever been attracted to a male at work?"**

5. A. **"At times, have you had what I would refer to as casual partners?"**

B. **"You've had multiple homosexual partners; is that true?"**

6. A. "Have you ever picked someone up or been picked up or performed any sexual act in the Western Prom Park?"

B. "Have you engaged in sexual acts on a pickup basis in something like a park or a gathering place?"

C. "Was that grab or two grabs by [P.T., the alleged harasser] very different from what you've done with other men?"

7. A. "Do you agree that you told [the plaintiff's psychiatrist expert] that at times you've been promiscuous?"

B. "Did you have sexual relations with any males at IBC?"

*See* Defendant's Memorandum at 2–4.

I rule as follows with respect to defendant's counsel's motion to compel answers to these questions:

■ 1. **Question 4:** *Denied.* Defendant's counsel explains that this query attempts to elicit the context of the 1995 workplace comment for which A.W. was counseled. *See id.* at 3. He posits that it would elicit information relevant to liability, credibility and damages. *See id.* I address credibility first. In his memorandum, defendant's counsel observed that he was willing to submit materials to the court *ex parte* to establish the basis for his belief that some of the questions in issue are relevant for impeachment purposes. *See id.* at 2 n. 2. He did not do so with respect to Question 4.

As concerns liability, defendant's counsel cites one case, *Sanchez v. Zabihi*, 166 F.R.D. 500, 501–02 (D.N.M.1996), in which a court did indeed permit limited discovery of a sexual-harassment plaintiff's sexual conduct at a former workplace.[2] However, in that case, the court did so because the defendant had asserted a "sexual aggressor" defense (*i.e.*, that the plaintiff had in fact been the sexual aggressor toward the alleged harasser), which the court found "goes to one of the elements generally required to prove sexual harassment: that the sexually harassing behavior complained of be unsolicited or unincited and which is undesirable or offensive to the plaintiff." *Sanchez*, 166 F.R.D. at 501. At the June 30 hearing, defendant's counsel conceded that he did not (as yet) have evidence to support a sexual-aggressor defense in this case. Thus, I cannot find that Question 4 is likely to elicit probative evidence (let alone that it would be sufficiently probative to satisfy the Rule 412 balancing test).

Defendant's counsel fares no better in demonstrating the relevance of Question 4 to A.W.'s claim for damages. A.W.'s psychiatrist opines that based on the history A.W. provided him (which the psychiatrist did not attempt to corroborate), prior to the incidents of which A.W. now complains he suffered from an underlying chronic, low-grade post-traumatic stress disorder ("PTSD") predicated on four traumatic sexual experiences: an incident in which he was sexually molested by an adult acquaintance when he was approximately four years old, an incident in which he was forced to perform oral sex on four acquaintances when in high school, and two rapes when he was in his early twenties. *See* Psychiatrist's Letter at 1–2. The psychiatrist states that the events at IBC were not sufficiently severe, in and of themselves, to meet threshold diagnostic criteria for PTSD; however, they caused the underlying PTSD condition to flare up to a severe degree. *See id.*

---

**2.** None of the other cases cited by defendant's counsel in the context of discussing Question 4 stands for the proposition that, for purposes of liability, a defendant's counsel may inquire into a sexual-harassment plaintiff's sexual conduct or predisposition at a prior place of employment. *See* Defendant's Memorandum at 3–4; *Simpson v. University of Colo.*, 220 F.R.D. 354, 363 (D.Colo.2004) (defendant's expert physician permitted to conduct Rule 35 examination of plaintiff and in so doing to inquire into her sexual history); *Lara v. Helen of Troy Nev. Corp.*, 218 F.R.D. 504, 505 (W.D.Tex.2003) (plaintiff permitted to undertake discovery concerning witness's knowledge of sexual activities at defendant workplace); *Gibbons*, 1999 WL 33226474, at *2–*3 (defendant permitted to undertake discovery concerning sexual-harassment plaintiff's sexual relationships with defendant's employees, including with defendant's managerial employees outside of work; however, court would not permit discovery regarding plaintiff's sexual relationships with persons other than defendant's employees, which was "not relevant and would serve only to harass, embarrass and annoy Plaintiff.").

Questions involving the four identified PTSD precursors (or other violent or traumatic sexual events to which the plaintiff was subjected) clearly would be highly probative with respect to A.W.'s damages. *See, e.g., S.M.*, 262 F.3d at 916–18, 920 (in case in which plaintiff claimed that sexual assault by former employer had exacerbated PTSD stemming from childhood sexual abuse, trial judge properly denied defendant's request to introduce evidence of plaintiff's extramarital affair for purposes of proving that affair, rather than sexual assault, had destroyed plaintiff's marriage; plaintiff "did not open the door to more than rebuttal evidence that she had been assaulted previously. The court appropriately deemed the door open only to the extent of evidence concerning past rape and abuse, striking an acceptable balance between the danger of undue prejudice and the need to present the jury with relevant evidence[.]") (citation and internal quotation marks omitted); *Giron v. Corrections Corp. of Am.*, 981 F.Supp. 1406, 1408–09 (D.N.M.1997) (permitting limited discovery into plaintiff's past sexual history to distinguish damages caused by incident in issue from those caused by past incidents, noting: "The Court is convinced that discovery regarding the plaintiff's sexual contact history may be relevant to the issue of damages, but only to the extent that such sexual contact caused pain and suffering. Inquiry along these very narrow lines in discovery shall be permitted."). Nonetheless, I fail to see the relevance to damages of whether A.W. ever was attracted to a male at work. The psychiatrist does not identify such feelings as contributing to A.W.'s workplace-triggered suffering, and I fail to discern any connection between those feelings and any traumatic or violent sexual events suffered by A.W.

■ 2. **Questions 5A–B:** *Denied.* Defendant's counsel asserts that these questions go to liability (A.W.'s mental state and what he would perceive as offensive) and damages ("I think I'm entitled to find out what other things he has been involved in of a sexual nature that may or may not be traumatic."). Defendant's Memorandum at 4 (citation and internal quotation marks omitted). As regards liability, these are precisely the types of intrusive generalized questions about past, private, consensual sexual conduct that courts readily have found marginally (if at all) probative to sexual-harassment claims, highly prejudicial and likely to harm the plaintiff. *See, e.g., B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1105 (9th Cir.2002) ("[C]ourts have held ... that the probative value of evidence of a victim's sexual sophistication or private sexual behavior with regard to the welcomeness of harassing behavior in the workplace does not substantially outweigh the prejudice to her."); *Rodriguez–Hernandez*, 132 F.3d at 856 (trial court did not abuse discretion in ruling that evidence concerning sexual-harassment plaintiff's moral character and promiscuity was inadmissible under Rule 412); *Barta*, 169 F.R.D. at 136 ("The fact that the plaintiff may welcome sexual advances from certain individuals has absolutely no bearing on the emotional trauma she may feel from sexual harassment that is unwelcome. Past sexual conduct does not callous one to subsequent, unwelcomed sexual advancements.") (citation and internal punctuation omitted).

As regards damages, the questions seemingly address incidents of consensual sex, which are neither linked by A.W.'s psychiatrist to his emotional damages nor otherwise constitute a species of sexual experience that one could fairly describe as violent or traumatic for A.W. Such marginal probative value as they might have is outweighed by the potential harm and embarrassment to the plaintiff.

3. **Questions 6A–C:** *Granted as to Question 6A; otherwise denied.* To the extent that defendant's counsel argues these questions are relevant on liability and damages grounds, *see* Defendant's Memorandum at 4, his showing is insufficient for the same reasons articulated in regard to Questions 5A–B. To the extent he argues they are relevant for impeachment, he submitted a document *in camera* that persuades me that Question 6A might lead to evidence admissible at trial, even taking into consideration the concerns of the Rule 412 balancing test. Thus, I will permit that question. However, the probative connection between Questions 6B and 6C and the impeachment material is considerably more attenuated. On that basis, and in

view of the highly intrusive and embarrassing nature of the questions, I decline to allow defendant's counsel to pose Questions 6B and 6C.

4. **Questions 7A–B:** *Denied.* With respect to Question 7A, the issue is not that A.W. refused to answer but rather that his response was the product of improper witness coaching from his counsel. *See* Defendant's Memorandum at 4. Upon careful review of the relevant exchange, I am satisfied that no improper coaching occurred. *See* A.W.Dep. at 197–98.

■ Defendant's counsel seeks to compel A.W. to answer Question 7B on the ground that it is relevant to liability. *See id.* at 4–5. I decline to compel him to answer the question as worded. Defendant's counsel evidently intends that it be construed to encompass any sexual relations A.W. may have had with IBC male employees outside of work, as well as in the workplace. *See id. Gibbons,* on which defendant's counsel relies to support his request to inquire into "off-duty" sexual relationships, is distinguishable. In permitting such inquiry, the *Gibbons* court emphasized that the sexual-harassment plaintiff had admitted to having had sexual relationships with other employees and that the defendant claimed she did so to prevent disciplinary action for inadequate work performance. *See Gibbons,* 1999 WL 33226474, at *3. Defendant's counsel has made no such particularized showing of relevance in this case. Preclusion of inquiry into non-workplace, off-duty sexual contact is appropriate. *See Barta,* 169 F.R.D. at 136.

**Plaintiff's Request for Protective Order.** One final issue remains: the plaintiff's counsel's request for a protective order pursuant to Fed.R.Civ.P. 26(c) precluding questions concerning A.W.'s sexual history with persons other than the alleged harasser, P.T. *See* Plaintiff's Memorandum at 3. I decline to enter an order as broad as that proposed; however, I do preclude the defendant's counsel from inquiring about A.W.'s sexual history except to the extent such inquiry is (i) permitted by this order, (ii) concerns A.W.'s conduct at the premises of the IBC workplace with P.T. or others, or (iii) concerns sexual events that entailed violence or trau-

ma to A.W., including but not limited to those events expressly identified by his psychiatrist.

So ordered.