**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-4694 & 15-2694
_____

DAVID MATHIAS,
                    Appellee/Cross-Appellant

v.

SUPERINTENDENT FRACKVILLE SCI;
ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA,
                    Appellants/Cross-Appellees
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-13-cv-02002)
Honorable Harvey Bartle, III, U.S. District Judge
_____

Argued: December 6, 2016

Before:  FISHER,[*] KRAUSE, and MELLOY,[**] *Circuit Judges.*

(Opinion Filed: November 20, 2017)

Maria K. Pulzetti, Esq. **[ARGUED]**
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

*Counsel for Appellee/Cross-Appellant*

Susan E. Affronti, Esq.
Jennifer O. Andress, Esq. **[ARGUED]**
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107

*Counsel for Appellant/Cross-Appellee*
_____

OPINION OF THE COURT
_____

---

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.

[**] Honorable Michael J. Melloy, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

KRAUSE, *Circuit Judge*.

Undergirding federal habeas law is an extensive procedural framework that limits when and how a petitioner may raise post-conviction claims for relief and which claims are reviewable in federal court. Concerns of federalism, comity, and finality shape this complex framework and have required us to generate specific rules for when a petitioner's claim may be adjudicated on the merits. In this appeal brought by the Commonwealth of Pennsylvania from the District Court's grant of habeas relief on petitioner's first-degree murder conviction, we must interpret and apply a number of these rules to determine whether we have jurisdiction under Federal Rule of Appellate Procedure 4(a)(3) over petitioner's untimely cross-appeal from the District Court's denial of habeas relief on his conspiracy conviction; if so, whether Rule 4(a)(3)'s timeliness requirement should be waived in the interests of justice; and whether a certificate of appealability (COA) is required on cross-appeal. In addition, on the Commonwealth's appeal, we must consider whether the District Court was correct to conclude that petitioner's due process claim and related ineffective-assistance-of-counsel claim based on purportedly unconstitutional jury instructions were properly exhausted in state court, are meritorious, and withstand harmless error review. For the reasons set forth below, we will dismiss petitioner's cross-appeal and, on the Commonwealth's appeal, we will reverse the District Court's grant of habeas relief.

## I.    Factual Background and Procedural History

Petitioner David Mathias was charged with, *inter alia*, first-degree murder and conspiracy to commit first-degree

3

murder based on a violent incident that left one person dead and another severely injured, though capable of testifying at Mathias's state court trial.  As relevant to his defenses and the issues he would later raise on appeal, the record from that 2006 trial in the Philadelphia Court of Common Pleas reflects that in the early hours of May 23, 2005, Mathias and future co-defendant, Richard Jarmon, traveled to a boarding house where an acquaintance named Eric Richardson—later the victim-witness at Mathias's trial—rented a small efficiency room.

According to Richardson's trial testimony, Mathias knocked on Richardson's door, while Jarmon entered an adjacent room where a friend of Richardson's, Joseph Drew El, was lying on his stomach on the floor watching television. Richardson cautiously answered Mathias's knock, and Mathias asked if he had change for a five-dollar bill.  Although he felt "disturbed" and thought this a peculiar request, Richardson retreated back into his room, closing the door behind him, and retrieved five singles.  App. 304.  Richardson then exited the room, taking care again to shut the door, and handed five one-dollar bills to Mathias, who was waiting nearby with Jarmon and Drew El.  Mathias's fictitious mission accomplished, he asked Jarmon, "Are you ready?" and Jarmon stood up as if to leave.  App. 304.

Suddenly, Mathias drew a gun from his waistband and pointed it directly at Richardson's stomach.  Richardson reacted quickly by grabbing Mathias's wrist, but Mathias began to shoot at Richardson as the two struggled.  At the same moment, Jarmon drew a gun of his own and fired a fatal shot at Drew El, who still lay in a helpless and vulnerable position on the floor.  Jarmon then turned his gun on Richardson—joining Mathias's ongoing assault—while Richardson made a desperate attempt to flee the building, bleeding profusely from

4

gunshot wounds in his legs as he narrowly escaped. Richardson, "shot, scared, . . . frightened, [and] just running for [his] life," App. 307, was fortunate to encounter police a few blocks away who rushed him to the trauma unit of a nearby hospital. Back at the boarding house, Drew El died from the gunshot wounds inflicted by Jarmon.

Mathias's testimony at trial painted a different picture. He testified that he and Jarmon traveled to Richardson's residence to buy marijuana, where, once that transaction was complete, Richardson and Jarmon exchanged heated words, drew their guns, and began shooting at one another. Mathias portrayed himself as an innocent bystander and claimed that he was unaware Drew El was injured in the crossfire.

At the conclusion of the trial, the trial judge instructed the jury, among other things, on the charges of first-degree murder and conspiracy to commit first-degree murder and on accomplice liability. In the course of these instructions, however, the judge made inconsistent statements about the specific intent requirement for accomplice liability, at some points properly instructing the jurors they must find the accomplice himself had the specific intent to kill, and at other points, over defense counsel's objection and contrary to Pennsylvania law, indicating that the jurors could convict an accomplice based on the specific intent of the principal.

Specifically, before giving the "formal charge," the trial judge offered "plain English" commentary intended to give a "common sense view" of the relevant theories of liability and the crimes charged. App. 610. During this portion of the instructions, the judge spoke accurately and at length about accomplice liability. For example, the judge explained that "a defendant is an accomplice of another for a particular crime if

5

. . . [it is] proved beyond a reasonable doubt . . . [t]hat the defendant had the intent of promoting or facilitating the commission of that crime." App. 611. Applying this rule to the instant case, the judge further explained that the jury would have to "find beyond a reasonable doubt that there ha[d] been proof beyond a reasonable doubt that the defendant shared that specific intent to kill Joseph Drew El." App. 614.

Next, transitioning to the "formal instruction," App. 621, the trial judge covered first-, second-, and third-degree murder, conspiracy, aggravated assault, and weapons violations.[1] During this portion of the colloquy, the judge erroneously indicated no less than six times that Mathias could be convicted of first-degree murder through accomplice liability if the jury found Jarmon possessed the specific intent to kill Drew El. These instructions were misleadingly stated in the disjunctive, with the judge announcing the jury was required to find that either Mathias "or his alleged accomplice, Richard Jarmon, had the specific intent to kill . . . " App. 615.

Finally, addressing the charge of conspiracy to commit first-degree murder, the trial judge declined to "repeat" the definition of first-degree murder, noting that it was "the exact same requirement" and that it comprised the "same elements" that had been introduced earlier in the colloquy, but explaining that first-degree murder was the "object of the conspiracy." App. 628. From there, the judge correctly laid out the elements of conspiracy, explaining that the alleged co-conspirators must

---

[1] The jury instructions also covered robbery, for which Mathias was not charged. However, because the prosecution's theory of the case was that Mathias and Jarmon intended to rob Richardson, the elements of robbery were relevant to the instruction on second-degree murder.

6

have "shared the intent to commit the crime of first degree murder," which "would include the defendant having . . . shared the specific intent to kill." App. 630.

After these instructions, the jury deliberated for approximately one day before returning a verdict of guilty on the charges of first-degree murder, criminal conspiracy to commit first-degree murder, aggravated assault, possession of an instrument of crime, and carrying a firearm without a license. Mathias was sentenced to a term of life on the murder conviction and a consecutive term of fifteen-and-a-half to thirty-one years on the conspiracy conviction, to be served concurrent with lesser terms for the additional charges.

Mathias appealed his convictions to the Superior Court. While appellate counsel raised the claim that the jury instructions on criminal conspiracy were erroneous and violated due process because they "forced the jury to convict on first degree murder if they believed that there was an overt or implied agreement," Supp. App. 2, he did not raise any arguments regarding the first-degree murder instructions. The Superior Court observed that appellate counsel had not adequately briefed any of Mathias's claims and so deemed them waived. Nonetheless, it opted to address the conspiracy instruction claim on the merits, finding it "somewhat difficult to follow" counsel's argument but concluding that "the trial court clearly instructed the jury that in order to convict Appellant of conspiracy to commit first-degree murder, it must find that [he] had the specific intent to kill." App. 678, 680-81.

Unsuccessful on direct appeal, Mathias filed a pro se petition under Pennsylvania's Post-Conviction Relief Act ("PCRA"). Supp. App. 45. In an untimely filing attempting to

7

amend his petition, Mathias raised a Sixth Amendment claim for ineffective assistance of counsel on the ground that appellate counsel failed to challenge the constitutionality of the first-degree murder instruction. Although the Court of Common Pleas dismissed Mathias's late filing, the Superior Court rejected it on the merits, applying Pennsylvania's formulation of the two-part ineffective-assistance-of-counsel test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, it held that counsel's performance was not deficient because although "the specific intent instructions and instruction on first degree murder . . . [were] less than precise," App. 664, and "lacked clarity," App. 665, "the [trial] court did instruct the jury . . . that it was required to find that Appellant had specific intent to kill," App. 665, and that Mathias was not prejudiced because "the jury did find that Appellant had a specific intent to kill Mr. El since it found him guilty of conspiracy to commit first degree murder, which requires a finding of specific intent to kill." App. 666.

Turning next to the federal courts, Mathias filed a pro se habeas petition, pursuant to 28 U.S.C. § 2254, in which he claimed (1) the first-degree murder instruction violated his due process rights, and (2) appellate counsel rendered ineffective assistance by failing generally to file an adequate brief and thereby waiving whatever claims he might have raised on appeal. The Magistrate Judge recommended denying the first claim either on the ground that it was unexhausted and procedurally defaulted or, alternatively, that the alleged constitutional error in the first-degree murder instruction was harmless in light of the specific intent finding the jury must have made in convicting Mathias for conspiracy to commit first-degree murder, and rejecting the second claim because

8

Mathias was unable to show how he was prejudiced by appellate counsel's deficient performance.

The District Court, however, rejected the Magistrate Judge's recommendation and concluded that Mathias did not fail to exhaust the first-degree murder instruction claim because, although he did not label it as a separate claim in his PCRA petition, the Superior Court, in adjudicating the ineffective-assistance-of-counsel claim that he did expressly raise, also considered the constitutionality of the instruction itself in evaluating deficient performance and prejudice. In another threshold decision, the District Court found the Superior Court's application of federal law on internally inconsistent jury instructions was contrary to that prescribed by the Supreme Court in *Francis v. Franklin*, 471 U.S. 307 (1985), and therefore proceeded to review this claim de novo instead of using the highly deferential standard of review typically required when federal courts review state court decisions on habeas. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011) (citing 28 U.S.C. § 2254(d)); *Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007).

As to the merits of the jury instruction claim, the District Court, relying largely on *Francis*, held that, read as a whole, the instructions relieved "the Commonwealth of its burden of proving beyond a reasonable doubt the key element that Mathias had a specific intent to kill," *Mathias v. Collins*, No. 13-2002, 2014 WL 5780834, at *8 (E.D. Pa. Nov. 5, 2014) (citing *Francis,* 471 U.S. at 322; *In re Winship*, 397 U.S. 358, 364 (1970)), and thus that the Superior Court's contrary decision was unconstitutional and warranted habeas relief. The District Court also rejected the Magistrate Judge's harmless error determination, reasoning instead that the conspiracy charge, by virtue of incorporating the first-degree murder

9

charge, made it impossible to infer a jury finding of specific intent and that the jury instruction regarding the jury's manner of deliberating had the same effect.

With respect to Mathias's second claim—based on appellate counsel's generally inadequate briefing—the District Court construed it liberally as a claim that counsel was ineffective specifically for failing to raise these concerns with the first-degree murder instruction, a claim which Mathias had expressly raised and exhausted on PCRA review. The District Court again applied plenary review, assuming the Superior Court's application of Pennsylvania law was contrary to that prescribed by the Supreme Court in *Strickland*, which Mathias now concedes was error. And, having determined that the due process claim related to the first-degree murder instruction itself had merit, the District Court concluded that appellate counsel necessarily was deficient for failing to raise that claim and that Mathias was prejudiced by that deficient performance. Accordingly, the District Court granted Mathias habeas relief on the basis of his ineffective assistance claim, as well as his due process claim.

The Commonwealth now appeals those rulings, and Mathias, in an untimely filing over which our jurisdiction is uncertain, cross-appeals, seeking a grant of habeas relief on his conviction for criminal conspiracy to commit first-degree murder and requesting a COA to assert both Sixth Amendment and due process claims based on the jury charge underlying that conviction. For the reasons that follow, we will exercise jurisdiction over Mathias's untimely cross-appeal, waiving the Rule 4(a)(3) timeliness requirement but denying Mathias's application for a COA, and we will reverse the District Court's grant of habeas relief on Mathias's murder conviction.

10

## II.    Mathias's Cross-Appeal

The claims Mathias seeks to raise on cross-appeal—regarding the constitutionality of the trial court's conspiracy instructions and appellate counsel's failure to effectively brief this issue—are only eligible for review on the merits if they can clear three procedural hurdles.  The first is jurisdictional: As Mathias concedes that his notice of cross-appeal was untimely filed under Federal Rule of Appellate Procedure 4(a)(3), Fed. R. App. P. 4(a)(3), we must determine if that rule is mandatory and binding on the court or permissive and excusable by the reviewing court.  The second is the standard for excusing a default and our application of that standard to this case.  And the third is whether the statutory COA requirement that applies to a petitioner's appeal on a successive petition also extends to a petitioner's cross-appeal, and if so, whether we should grant one in Mathias's case.  We conclude Mathias reaches but falters at this last threshold.

### A.    Jurisdiction Over Mathias's Cross-Appeal Under Rule 4(a)(3)

We first must determine if Federal Rule of Appellate Procedure 4(a)(3) is jurisdictional, a question that has divided the Courts of Appeals.[2]  The crux of the issue is that, in contrast

---

[2] *Compare, e.g.*, *Stephanie-Cardona LLC v. Smith's Food & Drug Ctrs., Inc.*, 476 F.3d 701, 705 (9th Cir. 2007) (finding Rule 4(a)(3) nonjurisdictional ); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 162 (2d Cir. 2006) (same); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 33 (D.C. Cir. 1990) (same), *with, e.g., Jackson v. Humphrey*, 776 F.3d 1232, 1239 n.6 (11th Cir.) (finding Rule 4(a)(3) jurisdictional), *cert. denied*, 136 S. Ct. 155 (2015); *Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d

to the thirty-day time limit for filing an initial notice of appeal, which appears in 28 U.S.C. § 2107 and has been recognized by the Supreme Court as a jurisdictional bar, *Bowles v. Russell*, 551 U.S. 205, 214 (2007), Rule 4(a)(3) is not a creature of statute, but a court-promulgated rule. Today we join those Circuits that have found this distinction of jurisdictional significance. As explained below, we are guided to this outcome by our own precedent and by recent Supreme Court case law.

We begin with our case law, which paves the way for our holding today though not by the straightest of routes. Our starting point is *United States v. Tabor Court Realty Corp.*, 943 F.2d 335 (3d Cir. 1991), where we observed that "[a]lthough a timely, initial notice of appeal is mandatory and jurisdictional, it has been the rule of this Circuit that Rule 4(a)(3), which provides . . . time for filing cross or other separate appeals, is not a jurisdictional prerequisite," *id.* at 342-43. We acknowledged in *Tabor* that the Supreme Court, in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988), deemed jurisdictional Rule 3(c)'s requirement that a notice of cross-appeal name all parties, and that *Torres* made reference to the "jurisdictional requirements of Rules 3 and 4." *Id.* at 317. But because *Torres* offered no "definitive statement as to whether or not a cross-appeal is mandatory or jurisdictional," *Tabor*, 943 F.2d at 344, we reasoned that it did not disturb our treatment of Rule 4(a)(3) as permissive. Two years later, however, in *EF Operating Corp. v. American Buildings*, 993

---

206, 213 (5th Cir. 2014) (same); *Sullivan v. City of Augusta*, 511 F.3d 16, 33 n.7 (1st Cir. 2007) (same). *See generally Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1298 & nn. 27, 28 (9th Cir. 1999) (listing cases).

F.2d 1046 (1993), we changed course and, without citing to or distinguishing *Tabor*, held in view of *Torres* that Rules 3 and 4 are in fact jurisdictional, *id.* at 1049 n.1.

While we have recognized the tension between *Tabor* and *EF Operating* since that time, we have not had occasion to resolve it. *See, e.g.*, *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 411-12 (3d Cir. 2003); *United States v. Erwin*, 765 F.3d 219, 232 n.9 (3d Cir. 2014). We reach that crossroad today, and, as our case law teaches that where two precedential opinions are in "unavoidable conflict," the earlier opinion controls, *Kossler v. Crisanti*, 564 F.3d 181, 194 n.8 (3d Cir. 2009), we deem *Tabor*, which treated Rule 4(a)(3) as nonjurisdictional, to be the law of our Circuit, *see Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) (explaining that "*en banc* consideration is required" in order to overrule the holding of a prior precedential opinion).

The rule of *Tabor* also accords with recent Supreme Court cases that distinguish "claim-processing rules"—that is, "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," such as "[f]iling deadlines"—as nonjurisdictional unless Congress has made them jurisdictional through clear and unequivocal statutory language. *Henderson v. Shinseki*, 562 U.S. 428, 435-36 (2011); *see Gonzalez v. Thaler*, 565 U.S. 134, 141-42 (2012); *Bowles*, 551 U.S. at 214-15; *Eberhart v. United States*, 546 U.S. 12, 16 (2005); *Kontrick v. Ryan*, 540 U.S. 443, 453-54 (2004). Examples of claim-processing rules that the Court has specified are nonjurisdictional include time limits in bankruptcy proceedings for a creditor to file objections to a debtor's discharge, *Kontrick*, 540 U.S. at 453-54, and the time period in criminal prosecutions for filing post-trial motions, *Eberhart*,

546 U.S. at 15-16. By contrast, the Court has classified the thirty-day time period for filing a notice of appeal as jurisdictional, noting "the jurisdictional distinction between court-promulgated rules and limits enacted by Congress," *Bowles*, 551 U.S. at 211-12, and explaining that "Rule 4 of the Federal Rules of Appellate Procedure carries § 2107 into practice," *Bowles*, 551 U.S. at 208, in contrast to mere "procedural rules adopted by the [c]ourt for the orderly transaction of its business," *id.* at 211 (quoting *Kontrick*, 540 U.S. at 454).

These cases indicate that, in contrast to Rule 4(a)(1), which requires appellants to take the "mandatory and jurisdictional" step of initiating a timely appeal, *Bowles*, 551 U.S. at 209, Rule 4(a)(3) is properly considered a nonjurisdictional "claim-processing rule"—promulgated to set filing deadlines for appellees considering whether to cross-appeal when a case is already brought within our jurisdiction, *Henderson*, 562 U.S. at 435. That is because, although Rule 4(a)(3) provides for cross-appeals the analogue to Rule 4(a)(1)'s time limit for initial appeals, it is not derived from any statutory analogue to 28 U.S.C. § 2107(a), but instead is simply a "procedural rule[] adopted by the [c]ourt for the orderly transaction of its business," *Bowles*, 551 U.S. at 211 (quoting *Kontrick*, 540 U.S. at 454), like other nonjurisdictional, claim-processing rules "that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson*, 562 U.S. at 435. To designate that type of rule as jurisdictional would too "lightly attach . . . drastic consequences" to a procedural requirement never intended to "govern [our] . . . adjudicatory authority." *Gonzalez*, 565 U.S. at 141 (internal quotation marks omitted).

In sum, we conclude Rule 4(a)(3) is not jurisdictional so that a party's failure to comply with it may be excused by the reviewing court. We turn next to the standard for granting that relief and whether that standard has been met in this case.

### B.        Waiver of Timeliness Requirement

In expounding on the standard for excusing a Rule 4(a)(3) violation, we start with *Tabor*, where we stated that the requirement may be waived "in the interest of justice under appropriate circumstances," *Tabor*, 943 F.2d at 343, but we did not elaborate on that standard. Because we must do so today, we will review our own case law, the standards articulated by other Courts of Appeals, and an analogous standard for the setting aside of default judgments and draw on their teachings before defining the standard for our Court.

As far as our case law, in *Rhoads v. Ford Motor Co.*, 514 F.2d 931 (3d Cir. 1975), we waived the deadline for a third-party defendant on the ground that he "might well have believed that he could not appeal the final judgment," *id.* at 934. Next, in *Tabor* itself, we excused a party's untimely motion of cross-appeal, observing that, under the facts of that case, "the disposition as to one party [was] inextricably intertwined with the interests of a non-appealing party so as to make it impossible to grant relief to one party without granting relief to the other." *Tabor*, 943 F.2d at 344. Finally, in *Repola v. Morbark Industries, Inc.*, 980 F.2d 938 (3d Cir. 1992), we declined to waive the strictures of Rule 4(a)(3), observing that the claims excluded as a result of our decision were not "inextricably intertwined" with the claims before us and "relief could [still] be fairly granted" in the case, *id.* at 942.

Outside of our own jurisprudence, in *S.M. v. J.K.*, 262 F.3d 914 (9th Cir. 2001), the Ninth Circuit, declining to waive the timely filing requirement, considered whether the delay was understandable, the obviousness of the need to file a cross-appeal, and whether the matters were inextricably related, *id.* at 923. That court determined there was "no reason to allow" the delayed cross-appeal where the putative claims were "essentially unrelated to the issues" on appeal, and the appellee "knew within the time period for filing her notice . . . that she intended to appeal the court's punitive damages ruling." *Id.* And in *Hysell v. Iowa Public Service Company*, 559 F.2d 468 (8th Cir. 1977), the Eighth Circuit vacated a judgment entered against a party not actually before it, notwithstanding that the deadline for filing a notice of cross-appeal had already passed, explaining, "To allow the judgment against the City to stand would be to risk assessing varying liabilities against two parties to the same wrong." *Id.* at 476-77.

We also find instructive the standard for setting aside a default judgment. Federal Rule of Civil Procedure 60(b) provides for relief from the entry of a final judgment, order, or proceeding pursuant to enumerated circumstances which include, under Rule 60(b)(1), "mistake, inadvertence, surprise, or excusable neglect" and, under Rule 60(b)(6), "any other reason that justifies relief." Fed. R. Civ. P. 60(b). We have held that the relevant factors to be considered on a Rule 60(b)(1) motion include prejudice, meritorious defense, culpability, and "the effectiveness of alternative sanctions," *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987), and that a party seeking relief under Rule 60(b)(6) must show "exceptional circumstances," to wit: that "absent such relief an extreme and unexpected hardship will result," *Mayberry v.*

16

*Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977) (internal quotation marks omitted).

What we distill from these sources is that the factors informing when waiver of Rule 4(a)(3) is appropriate "in the interest of justice," *Tabor*, 943 F.2d at 343, include: prejudice, merits, willfulness, and extraordinary circumstance. That is, we ask whether any party will be adversely and unfairly affected if the cross-appeal is not allowed; whether the issues substantially overlap such that severance may be inefficient or create an absurd result; whether good reason exists for the delay in filing; and whether there are extenuating circumstances present in the case that otherwise warrant relief. These considerations, taken as a group, encapsulate the issues courts find most significant when deciding whether to waive Rule 4(a)(3), and, applied with diligence, will maintain a high standard that safeguards the orderly and efficient administration of justice while keeping a level focus on fairness.

Applying these factors, we conclude without difficulty that waiver is appropriate here. The two new claims Mathias seeks to raise on cross-appeal would not likely support a second or successive habeas petition, which, if attempted, would have to overcome the onerous successive-petition bar, *see* 28 U.S.C. § 2244(b)(2), and there is no reason to believe the Government would suffer any prejudice by opposing his claims while litigating its own appeal. Further, although Mathias's putative cross-claims pertain to the trial court's conspiracy instructions rather than its first-degree murder instructions, they are substantively related to the claims already before us and would require similar legal analyses on the merits. *See Repola*, 980 F.2d at 941. Finally, while proceeding pro se, Mathias may well have believed he could not raise

17

additional claims through a cross-appeal mechanism, *see Rhoads*, 514 F.2d at 934, and, demonstrating diligence on Mathias's behalf, his newly appointed counsel filed the notice of cross-appeal promptly after entering an appearance in the case. Considering these factors (and without need to consider extraordinary circumstances), the interests of justice are served by the efficiency and fairness in allowing Mathias's cross-appeal to proceed. Accordingly, we will excuse his untimely cross-appeal and consider the next threshold he must cross: the COA requirement.

## C. Certificate of Appealability

The Supreme Court stated as recently as 2015 that whether a petitioner is required to obtain a COA when taking a cross-appeal is "unclear," observing that 28 U.S.C. § 2253(c), which establishes the COA requirement on appeal, "performs an important gate-keeping function" that no longer exists once an appeal is noticed. *Jennings v. Stephens*, 135 S. Ct. 793, 802 (2015). The Court expressly declined to decide whether § 2253(c) "embraces a cross-appeal," *id.*, and our Circuit has similarly left the matter for another day, *see Mickens-Thomas v. Vaughn*, 321 F.3d 374, 376 n.2 (3d Cir. 2003). That day has arrived, and we hold that a COA is mandatory for a petitioner seeking to take a cross-appeal.

When initiating an appeal, a petitioner is obligated to obtain a COA by making "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2)—which includes a "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v.*

*Estelle*, 463 U.S. 880, 893 n.4 (1983)). We perceive no reason to set aside this obligation merely because the petitioner's claims happen to arrive by way of cross-appeal. To the contrary, in this context too it can serve its intended purpose of "screen[ing] out issues unworthy of judicial time and attention and ensur[ing] that frivolous claims are not assigned to merits panels," a "gatekeeping function" that is satisfied "[o]nce a judge has made the determination that a COA is warranted and resources are deployed in briefing and argument."[3] *Gonzalez*, 565 U.S. at 145.

This is a case in point, where two putative cross-claims, albeit accompanied by novel questions of procedural viability, have added significantly to the parties' briefing and preparation for argument, affecting our Court in equal measure. In short, Mathias must obtain a COA before his cross-claims can be addressed on the merits, and we now take up his application.

To merit a COA, Mathias must meet the "substantial showing" requirement under 28 U.S.C. § 2253(c)(2). *See Slack*, 529 U.S. at 483. In addition, where a district court has denied a petition on procedural grounds "a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason

---

[3] Although the Seventh Circuit has suggested that once a state has elected to appeal the grant of habeas relief, "there are no remaining gates to be guarded," and thus, it is futile to require a COA on cross-appeal, *Szabo v. Walls*, 313 F.3d 392, 398 (7th Cir. 2002), we do not interpret § 2253(c)'s "gatekeeping function" so narrowly, *Gonzalez*, 565 U.S. at 145.

19

would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484. Quite simply, Mathias cannot overcome this procedural hurdle.

As Mathias puts it, he "seeks to cross-appeal the district court's denial of relief" on his claims that the conspiracy instruction violated his due process rights and that appellate counsel was ineffective for failing to challenge that instruction. App. 58. The District Court, however, made clear that Mathias "waived any challenge to the conspiracy conviction and instructions," *Mathias*, 2014 WL 5780834, at *9 n.5, and that conclusion is supported by the record, which nowhere reflects that Mathias raised these claims in his § 2254 petition.

Mathias, while conceding he did not articulate the claims in explicit terms, nonetheless contends they were implicit in the claims he did raise, suggesting the District Court should have recognized them from offhand references to the conspiracy instruction made in the parties' briefing, the fact of that instruction's incorporation of the first-degree murder instruction, and the argument raised by counsel on direct appeal that the conspiracy instruction was unconstitutional. We reject the notion that the mere recitation of facts or procedural history or some combination of hints and innuendo suffice to fairly raise a claim. Rather, "the crucial question regarding waiver is whether the petitioner presented the argument with sufficient specificity to alert the district court," that is, whether the district court was put on "notice of the legal argument." *Lark v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 596, 607-08 (3d Cir. 2011) (citing *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005)). And that standard is not met merely because the facts underlying a potential legal argument were available in the record. Mathias failed to alert the District Court to the legal claims themselves, *see id.*, so that we cannot

say "jurists of reason would find it debatable whether the District Court was correct in its procedural ruling" that those claims were waived, *Slack*, 529 U.S. at 484. For that reason, we will deny Mathias's application for a COA and dismiss his cross-appeal.

## III.    Commonwealth's Appeal

The Commonwealth appeals the District Court's grant of the Great Writ on Mathias's conviction for first-degree murder based on his ineffective-assistance-of-counsel and due process claims arising from the first-degree murder instruction. For the reasons set forth below, we agree with the Commonwealth that the District Court incorrectly applied a de novo standard of review in considering the ineffective assistance claim and that, when reviewed with proper deference, the Superior Court's decision was not contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). We also reach this conclusion as to the due process claim, applying appropriate deference and holding that that claim was exhausted and the Superior Court had the opportunity to, and in fact did, address the merits, rendering a decision that was not contrary to or an unreasonable application of federal law governing internally inconsistent jury instructions, and nonetheless any error arising from the instructions would have been harmless.

### A.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 2254, and we have jurisdiction under 28 U.S.C. § 2253. Because the District Court did not conduct an evidentiary hearing and engaged in no independent fact finding, we apply de novo review to its factual inferences drawn from the state

21

court record and its legal conclusions, including the grant of habeas relief. *Albrecht v. Horn*, 485 F.3d 103, 114 (3d Cir. 2007); *Hakeem v. Beyer*, 990 F.2d 750, 758 (3d Cir. 1993).

## B.     First-Degree Murder Instruction Claims

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Mathias, to prevail on his habeas petition, carried the burden of demonstrating that the Superior Court decision was "'contrary to' federal law then clearly established in the holdings of [the Supreme] Court" or "'involved an unreasonable application of' such law." *Richter*, 562 U.S. at 100 (quoting 28 U.S.C. § 2254(d)(1)); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "A state court decision is 'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court.'" *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000)) (alteration in original).

In contrast, a state court decision reflects an "unreasonable application of such law" only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents," a standard the Supreme Court has advised is "difficult to meet" because it was "meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has cautioned, an "*unreasonable* application of federal law is different from an *incorrect* application of federal law," *Richter*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410), and whether we "conclude[] in [our] independent judgment that the relevant

22

state-court decision applied clearly established federal law erroneously or incorrectly" is irrelevant, as AEDPA sets a higher bar. *Williams*, 529 U.S. at 411.

Here, as to both Mathias's ineffective-assistance-of-counsel and due process claims based on the first-degree murder instruction, the District Court held the Superior Court's decision was "contrary to" clearly established Supreme Court precedent and thus applied de novo review instead of AEDPA deference, concluding the claims were meritorious. These rulings were in error. As we explain below, (1) the Superior Court's decision was not contrary to *Strickland* so that the District Court should have applied AEDPA deference, determining whether the Superior Court's application of *Strickland* was an unreasonable application of clearly established Supreme Court precedent; (2) the Superior Court's decision was not an unreasonable application of *Strickland* because, regardless of whether counsel's performance was deficient, the Superior Court did not clearly err in determining there was no prejudice; and (3) the Superior Court's decision was not an unreasonable application of Supreme Court precedent on internally inconsistent jury instructions, and regardless any error was harmless. We address these issues in turn.

### 1. AEDPA Deference

The District Court here declined to apply AEDPA deference in reviewing the Superior Court's ineffective assistance and due process analysis, holding both were "contrary to clearly established Supreme Court precedent." *Mathias*, 2014 WL 5780834, at \*8; *see id.* at \*5. It did so in error because, as for the ineffective-assistance-of-counsel claim, it determined the Superior Court, by relying on the

23

Pennsylvania formulation of *Strickland*, "did not delve into the[] questions" of deficient performance and prejudice that *Strickland* requires and therefore was "contrary to *Strickland*." *Id.* at *5. The state law formulation on which the Superior Court relied, however, is one we already have expressly held is "not contrary to *Strickland,*" *Jacobs v. Horn*, 395 F.3d 92, 106 n.9 (3d Cir. 2005), and the Superior Court not only invoked that permissible test, but proceeded to apply it, making findings as to both deficient performance and actual prejudice. Hence, as even Mathias concedes on appeal, the District Court simply erred in viewing the Superior Court's decision as "contrary to" clearly established federal law, *Richter*, 562 U.S. at 100, and the proper inquiry is whether the Superior Court's rejection of Mathias's ineffective-assistance-of-counsel claim was an unreasonable application of clearly established federal law, *Knowles v. Mirzayance*, 556 U.S. 111, 121-23 (2009); *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 546-50 (3d Cir. 2014). The District Court misapplied plenary review to Mathias's due process claim as well, failing to cite or consider in its analysis a key Supreme Court case under which the Superior Court's decision is not "contrary to" clearly established federal law. *Richter*, 562 U.S. at 100. Applying the appropriate deferential standard of review, we turn first to the ineffective-assistance-of-counsel claim.

### 2. Ineffective Assistance Claim

On habeas review, we may begin and, when dispositive, end with either of *Strickland*'s two prongs, *see Burt v. Titlow*, 134 S. Ct. 10, 18 n.3 (2013); *Collins*, 742 F.3d at 547, and here we follow "the practical suggestion in *Strickland* that we . . . consider the prejudice prong before examining the performance of counsel prong" because that approach is "less burdensome to defense counsel," *United States v. Lilly*, 536

24

F.3d 190, 196 (3d Cir. 2008) (alteration omitted) (citation omitted), and makes it "easier to dispose of [the] ineffectiveness claim," *Strickland*, 466 U.S. at 697; *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 n.10 (3d Cir. 2017). Applying appropriate AEDPA deference,[4] we must assess whether, even assuming counsel's performance was deficient, the Superior Court's decision that Mathias did not suffer prejudice was "'contrary to' federal law then clearly established in the holdings of [the Supreme] Court" or "'involved an unreasonable application of' such law," *Richter*, 562 U.S. at 100 (quoting 28 U.S.C. § 2254(d)(1))—an assessment that requires us to examine whether the petitioner has shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with "a reasonable probability" meaning "a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694. Because the *Strickland* standard is an especially "general" one, "a state court has even more latitude to reasonably determine" whether

---

[4] While the Supreme Court has stated that "doubly deferential judicial review . . . applies to a *Strickland* claim evaluated under [AEDPA]," *Knowles*, 556 U.S. at 123, and at least suggested in dictum that such deference applies to *Strickland*'s prejudice prong, *see Cullen*, 563 U.S. at 202, the Courts of Appeals have taken different approaches to this issue, *see Waiters v. Lee*, 857 F.3d 466, 477 n.20 (2d Cir. 2017) (collecting cases), *petition for cert. filed* (Aug. 18, 2017) (No. 17-5662). As it was not specifically briefed by the parties in this case, and reversal here is warranted under traditional AEDPA deference in any event, we will leave for another day whether "double deference" applies to both of *Strickland*'s prongs.

25

a petitioner has satisfied it. *Knowles*, 556 U.S. at 123 ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004))); *see id.* at 122.

Here, Mathias argues he was prejudiced by appellate counsel's deficient performance because, had counsel argued that the inconsistent jury charge allowed him to be convicted of first-degree murder without a finding of specific intent, he would have received a new trial. Mathias bases this argument on *Francis v. Franklin*, 471 U.S. 307 (1985), where the Supreme Court observed that if two discrete jury instructions regarding a requisite element are presented in contradictory terms, there exists "a reasonable likelihood that a juror understood the instructions in an unconstitutional manner, unless other language in the charge explains the infirm language sufficiently to eliminate this possibility," *id.* at 322 n.8. The Superior Court's failure to heed that admonition, according to Mathias (and the District Court),[5] was an

---

[5] Based on *Francis*, the District Court granted habeas relief to Mathias because the trial court gave contradictory instructions—directing on the one hand, that the jury would have to "find beyond a reasonable doubt that there ha[d] been proof beyond a reasonable doubt that the defendant shared th[e] specific intent to kill Joseph Drew El," App. 614, and that "a defendant is an accomplice of another for a particular crime if . . . [it is] proved beyond a reasonable doubt . . . [t]hat the defendant had the intent of promoting or facilitating the commission of that crime," App. 611, and stating on the other, on at least six occasions that the jury was required to find that either Mathias "or" his alleged accomplice, Richard Jarmon,

unreasonable application of clearly established Supreme Court case law.

That is not so, for neither Mathias nor the District Court considered the Supreme Court's subsequent decision in *Middleton v. McNeil*, 541 U.S. 433 (2004) (per curiam), which calls the holding of *Francis* into question and, at a minimum, demonstrates that it was not then "clearly established." In *Middleton*, the Court reversed the Ninth Circuit's grant of habeas relief where the trial court had given "three correct instructions and one contrary one" regarding imperfect self-defense without providing any correction or explanation for the discrepancy. *Id.* at 438. Relying on the familiar test that asks whether there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution," *id.* at 437 (citing *Estelle v. Mcguire*, 502 U.S. 62, 72 (1991)), but omitting any citation or reference to *Francis*, the Court explained that the Ninth Circuit "failed to give appropriate deference to the state court's decision" where the state court applied the proper test and merely reached a different conclusion regarding the "likelihood the jury was misled," *id.* at 437-38. The Court expressly characterized the instructions as "ambiguous because they were internally inconsistent," *id.* at 438, a descriptor that could easily apply to both *Francis* and the instant case.

*Middleton*'s divergence from *Francis* is striking and, here, outcome determinative because it renders the relevant Supreme Court precedent on ambiguous jury instructions less than "clearly established." *Middleton* and *Francis* are both cited and applied as good law for the propositions we discuss

had the specific intent to kill Joseph Drew El. App. 615-16, 622-23.

27

today, and it appears no court has had occasion to resolve the tension between them. *See, e.g.*, *Waddington v. Sarausad*, 555 U.S. 179, 191-92, (2009) (citing *Middleton*); *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 240 n.47 (3d Cir. 2017) (citing *Francis*); *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1078 (6th Cir. 2015) (citing *Middleton*); *Johnson v. McKune*, 288 F.3d 1187, 1194 (10th Cir. 2002) (discussing *Francis*); *United States v. Hernandez*, 176 F.3d 719, 733-35 (3d Cir. 1999) (same). Nor need we today, because the significance of *Middleton* to our decision is that it calls into question when and under what circumstances the curative jury instruction mandated by *Francis* is required and "fairminded jurists could disagree" and reasonably reach different results under these two cases. *Richter*, 562 U.S. at 102.

Here, in conducting its analysis of Mathias's ineffective-assistance-of-counsel claim, the Superior Court found conclusive the accurate portions of the trial court's first-degree murder instruction—where it properly articulated the specific intent requirement—as well as the conspiracy instruction, which was consistently correct and served as the basis for the jury's conviction on that charge. Although the Superior Court acknowledged trial counsel's multiple objections to the first-degree murder instructions, and that the instructions were "less than precise," App. 664, it concluded Mathias could not establish prejudice because the due process claim appellate counsel might have raised was unlikely to succeed given the Superior Court's assessment of the jury instructions in their entirety.

Applying AEDPA's deferential standard of review, we conclude the Superior Court's application of *Strickland* was not an unreasonable one. *Knowles*, 556 U.S. at 123. By reviewing the jury charge as a whole and accounting for the

28

unique facts of Mathias's case, the Superior Court, as a threshold matter, properly applied the Supreme Court's "reasonable likelihood" test for determining an incorrect instruction's constitutional effect, *see Estelle*, 502 U.S. at 72, and, in light of the tension between *Francis* and *Middleton* and the implications of that tension for the jury instructions in Mathias's case, we cannot say the Superior Court's prejudice analysis reflected an unreasonable application of "clearly established" federal law, *see Richter*, 562 U.S. at 101; *Jacobs*, 395 F.3d at 106.

In sum, because the Superior Court's decision passes muster when reviewed with proper deference under AEDPA, the District Court erred in granting Mathias habeas relief on this claim.

### 3. Due Process Claim

With respect to Mathias's due process claim based on the first-degree murder instruction, as a threshold matter, the Commonwealth challenges the District Court's conclusions that it was exhausted, had merit, and was not harmless. As explained below, we agree with the District Court only as to exhaustion because we conclude the Superior Court's rejection of the due process claim was not contrary to or an unreasonable application of clearly established federal law, and that any error was harmless, in any event. We will reverse the District Court's grant of habeas on this claim.

Federal courts may not grant relief unless a petitioner has "exhausted the remedies available" in the state courts. 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, a petitioner must "fairly present" his federal claim's "factual and legal substance to the state courts in a manner that puts them

29

on notice that a federal claim is being asserted." *Robinson v. Beard*, 762 F.3d 316, 328 (3d Cir. 2014); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Here, although his pro se brief mentioned only a claim of ineffective assistance in the headers to this argument, Mathias expressly argued in the text of his brief before the Superior Court that the first-degree murder instruction itself violated the Due Process Clause and cited to the Fourteenth Amendment of the United States Constitution and to relevant United States Supreme Court cases, including *Francis*, to support that argument. Under these circumstances, and recognizing, as we must, that pro se petitions are to be construed liberally, *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010); *Commonwealth v. Eller*, 807 A.2d 838, 845 (Pa. 2002), we are satisfied that Mathias did fairly present his due process claim to the Superior Court and that the Superior Court rejected that claim on the merits—albeit within its discussion of the ineffective-assistance-of-counsel claim and based on state cases that incorporated the federal standard,[6] *See Picard*

---

[6] To be clear, we do not hold today that, simply because a petitioner brings a claim of ineffective assistance of counsel or a state court adjudicates that claim, every claim counsel is allegedly deficient for failing to raise necessarily has been fairly presented to the state court as a federal claim. Indeed, that would effect a novel, gaping, and unwarranted expansion of federal habeas review, particularly as petitioners may discuss and state courts may analyze the alleged deficiency exclusively in terms of state law. Even those Courts of Appeals that have deemed exhausted claims that were raised *sua sponte* by the state court have done so only where the state court explicitly identified the claim as a federal claim and analyzed it under federal law. *See, e.g.*, *Jones v. Dretke*, 375 F.3d 352, 355 (5th Cir. 2004); *Sandgathe v. Maass*, 314 F.3d 371, 376-

*v. Connor*, 404 U.S. 270, 277-78 (1971); *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

Because the due process claim was properly exhausted, we move on to review the merits of the Superior Court's decision. Here, again, the tension between *Francis* and *Middleton* is dispositive, because, as we discussed in connection with Mathias's ineffective assistance claim, the relevant Supreme Court case law on ambiguous jury instructions—specifically, whether a curative instruction is required when inconsistent instructions are given—was not then-clearly established. *Richter*, 562 U.S. at 101. Accordingly, the Superior Court's rejection of Mathias's due process claim was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. 2254(d)(1).

Moreover, any error would be harmless because there was no "substantial and injurious effect or influence in

---

77 (9th Cir. 2002); *Walton v. Caspari*, 916 F.2d 1352, 1356 (8th Cir. 1990); *Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir. 1984). We have not adopted that rule to date, *see Sharrieff v. Cathel*, 574 F.3d 225, 228 n.4 (3d Cir. 2009) (noting in dictum that the Supreme Court has "recognized exceptions" to the fair presentation requirement "where the State has actually passed upon the claim" (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989))), and we do not have occasion to consider it further today because here, Mathias himself fairly presented the federal claim. We hold only that where, as here, a pro se petitioner has expressly identified the claim that counsel allegedly failed to raise as a federal constitutional claim and has briefed the merits of that claim by citing to federal cases, the claim has been properly exhausted.

determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Just as we held in *Bronshtein v. Horn*, 404 F.3d 700 (3d Cir. 2005), that the error was harmless where the first-degree murder instruction likewise erroneously omitted specific intent but the trial court's instructions regarding conspiracy and the jury's guilty verdict on that charge evinced a finding of specific intent to kill, *id.* at 711-15, so too here the error was harmless because the jury was instructed that the alleged co-conspirators must have "shared the intent to commit the crime of first degree murder," which "would include the defendant having . . . shared the specific intent to kill," App. 630, and the jury proceeded to return a guilty verdict on that charge. Nor is our conclusion altered by the fact that the trial court gave a progression charge or that the conspiracy charge also referred back to the first-degree murder instruction because the jury received its instructions *in toto* before beginning deliberations, and we presume the jury followed those instructions, including as to the specific intent it was required to find to convict Mathias as a co-conspirator. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

## IV. Conclusion

For the foregoing reasons, we will reverse the District Court's order granting Mathias a writ of habeas corpus and deny Mathias's application for a certificate of appealability.

32