NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-1491

———————

STEVEN LAZAR,
Appellant

v.

SUPERINTENDENT FAYETTE SCI; DISTRICT ATTORNEY PHILADELPHIA;
ATTORNEY GENERAL PENNSYLVANIA

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cv-06907)
District Judge: Honorable Gerald A. McHugh

———————

Argued: February 21, 2018

———————

Before: AMBRO, RESTREPO, FUENTES, <u>Circuit Judges</u>.

(Opinion Filed: April 24, 2018)

Jules Epstein          [ARGUED]
Kairys, Rudovsky, Messing & Feinberg, LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
          *Counsel for Appellant*

John W. Goldsborough      [ARGUED]
Max C. Kaufman
Susan E. Affronti
Ronald Eisenberg
John Delaney

Kelley B. Hodge
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107
    *Counsel for Appellee*

_____

OPINION[*]

_____

RESTREPO, <u>Circuit Judge</u>.

Appellant Steven Lazar was convicted by a Pennsylvania jury of second degree

murder.  The District Court denied his petition for a writ of habeas corpus.  We will

affirm.

**I**

**A**

In January 2007, an elderly man, Dario Gutierrez, was killed in his home.

Gutierrez's daughter discovered her father's body and observed that his keys and wallet

were missing.  Police officers observed that drawers appeared ransacked and that there

was a gold chain on the floor.  The police, however, neglected to process the victim's

yard as part of the crime scene.

In April 2007, the victim's daughter returned to her father's home, found a

suitcase in the yard, and contacted the police.  The suitcase contained Lazar's

identification and other personal items.  In July 2007, the police questioned Lazar, who

admitted that the suitcase was his.  He told the police that he had been using drugs with

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

someone named "John" who took the suitcase and, in turn, gave it to an older man to hold. The police released Lazar with the suitcase.

Lazar then told his roommate, Russell Angely, that he had been questioned by the police and confessed to Angely that he committed the murder. In November 2007, Lazar and Angely got into a fight. Angely called the police and informed them that Lazar had confessed to murder. Lazar also confessed to four other civilian witnesses. All five civilian witnesses testified at trial, although Lazar challenged their credibility. Two of these witnesses also testified to seeing Lazar with weapons, such as hatchets, consistent with the murder weapon.

On the morning of November 19, 2007, the police arrested Lazar on a bench warrant and questioned him about the murder. At around 7:30 p.m., Lazar gave his second statement to the police. He said that he had been using drugs with John when John left, armed with a hatchet, to recover a debt allegedly owed by the victim. Lazar told the police that he later entered the victim's house where he saw the victim dead and John, covered with blood, ransacking the drawers.

The police held Lazar overnight. He gave a third and final statement to the police the next day, November 20, 2007, from 2:45 to 4:20 p.m. This time, Lazar confessed that he was present when John struck the victim with the hatchet; that Lazar himself struck

and punched the victim; that John took the victim's wallet and searched his drawers; and that Lazar accepted money from John.[1]

Around 10:00 p.m. that night, the police took Lazar to a hospital emergency room after he reported pain while urinating. At the hospital, Lazar complained of shaking leg pain, stomach pain, dizziness, nausea, diarrhea, and stated that he was suicidal. Lazar was examined by a doctor in the psychiatric department, who found that Lazar was "irritable and cooperative," that his "thought process was goal directed," that he was "oriented and expressed suicidal ideation but had no plans," and that his "insight and judgment were fair." State Court Record 399 (quotation marks omitted). Lazar also tested positive for cocaine, marijuana and benzodiazepine. He was given a low dose of medication prescribed for withdrawal and was discharged after only a few hours.

**B**

Unbeknownst to the jury and central to this appeal, Lazar was being treated with methadone for drug addiction at the time of his arrest. Lazar received his last dose of methadone the day before he was arrested, November 18, 2007, at 10:34 a.m. When he gave his second statement to the police, Lazar had been without methadone for thirty-three hours. When he gave his third statement, he had been without methadone for approximately fifty-two hours.

The jury did not hear that Lazar was entering or in withdrawal from methadone when he confessed to the police. To the contrary, trial counsel incorrectly stipulated that

---

[1] Lazar also told the police that there was a sexual encounter with the victim, which was consistent with forensic evidence showing that the victim had recently ejaculated.

4

Lazar had his last dose of methadone a month earlier, on October 24, 2007. Although trial counsel had records showing that this was incorrect, trial counsel did not read the records, believing they were duplicates of other documents. Had trial counsel read the records, he could have called an expert witness at trial to testify that Lazar's symptoms, which the jury heard, were associated with withdrawal.

## C

Lazar was convicted of second degree murder and sentenced to life imprisonment. His direct appeal was denied. He filed a petition for post-conviction relief alleging, *inter alia*, that trial counsel was ineffective for failing to review the methadone records. The state court granted an evidentiary hearing, at which both Lazar and the Commonwealth called expert witnesses to opine on whether Lazar was suffering from methadone withdrawal when he made his second and third statements to the police. Lazar's expert witness testified that it was very likely that Lazar was experiencing methadone withdrawal when he made his third statement. The Government's expert testified that Lazar's withdrawal systems would have been suppressed by other substances in his body, noted that the hospital treated Lazar with only a low dose of withdrawal medication, and also noted that the hospital discharged him quickly.

Ruling on Lazar's ineffective assistance of counsel claim, the trial court found that defense counsel performed deficiently when he stipulated that Lazar had his last dose of methadone a month before his arrest. It found, however, that Lazar was not prejudiced under *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The trial court found that "[a]t best, [the jury] would have heard from competing experts that the defendant was

experiencing an unknown quantum of withdrawal symptoms during the taking of his statements." Supp. App. 156. The jury would have also considered this testimony in conjunction with the hospital records, which provided that Lazar "was oriented . . . and [that] his insight and judgment were fair." *Id.* (quotation marks omitted). The Superior Court affirmed the trial court's conclusions, and the Pennsylvania Supreme Court declined review.

Lazar then filed this timely habeas corpus petition alleging that trial counsel was ineffective for failing to review the methadone records. The District Court noted that the state court had found deficient performance. Therefore, the question before the Court was whether Lazar was prejudiced. In a thoughtful and well-reasoned opinion, it recognized that a "confession is like no other evidence." App. 6 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991)). It has "a 'profound impact on the jury' and 'is probably the most probative and damaging evidence that can be admitted against him.'" *Id.* at 11 (quoting *Fulminante*, 499 U.S. at 296). Still the Court found that Lazar could not overcome the standard of review of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1). It granted a certificate of appealability because reasonable jurists could disagree. *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017).[2]

---

[2] In its brief, the Commonwealth asked us to vacate the certificate of appealability. At oral argument, the Commonwealth reasonably withdrew this request.

6

**II**[3]

AEDPA limits the ability of a federal court to grant habeas corpus relief to a petitioner based upon a federal constitutional claim that was "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Under Section 2254(d), habeas relief shall not be granted unless the adjudication "(1) resulted in a decision that was contrary to, or *involved an unreasonable application of, clearly established Federal law*, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (emphasis added). Under Section 2254(d)(1), a state court decision involves an unreasonable application "if the court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case." *McKernan v. Superintendent*, 849 F.3d 557, 563 (3d Cir. 2017) (quotation marks and citation omitted).

Lazar's claim was adjudicated on the merits in state court, which "heard and evaluated the evidence and [his] argument[]" that he was prejudiced by trial counsel's failure to review the methadone records. *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (emphasis, quotation marks, and citation omitted). Therefore, the question before us is whether the state court's application of the prejudice prong of *Strickland* "involved an unreasonable application of" that precedent. 28 U.S.C. § 2254(d)(1).

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Our review of the District Court's decision is plenary. *Dennis v. Secretary*, 834 F.3d 263, 280 (3d Cir. 2016) (en banc).

Under *Strickland*, prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A 'reasonable probability' is one 'sufficient to undermine confidence in the outcome.'" *Bey v. Superintendent*, 856 F.3d 230, 242 (3d Cir. 2017) (quoting *Strickland*, 466 U.S. at 694).[4] We cannot hold that the state court unreasonably applied this standard. While Lazar ably critiques the Superior Court's decision in several ways, each falls short. He points out (1) that the civilian witnesses to whom he confessed were impeached; (2) that the element of robbery for felony murder was proven primary through his third statement; and (3) that the Government referred to his third statement in its closing argument. As to the first two points, the Superior Court considered them. *See* Supp. App. 177 (impeachment noted); *id.* at 166 (additional evidence of robbery noted). As to the third, on this record we are constrained by Section 2254(d)(1) to affirm, as there was no unreasonable application of clearly established federal law.[5]

_____

[4] The Supreme Court has stated that when the *Strickland* analysis is combined with Section 2254(d), the analysis is "doubly" deferential. *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citation omitted). However, it is an open question in this Circuit whether this language applies to the prejudice prong. Indeed, we recently granted panel rehearing to remove references to "doubly deferential" review from a *Strickland* prejudice analysis. *Compare Mathias v. Superintendent*, 869 F.3d 175, 189, 191 (3d Cir. 2017) (applying doubly deferential review), *vacated by Mathias v. Superintendent* 876 F.3d 462 (3d Cir. 2017), *with Mathias*, 876 F.3d at 477 n.4 (declining to resolve the issue). In Lazar's case, the District Court found that doubly deferential review does not apply to the prejudice prong of *Strickland*. *See* App. 16 n.3 (citing *Evans v. Secretary*, 703 F.3d 1316, 1334 (11th Cir. 2013) (en banc) (Jordan, J., concurring) (distinguishing prejudice from deficient performance)). We assume *arguendo* that this is correct, as we will nevertheless affirm the denial of the writ.

[5] Lazar also argues that the police recovered a machete from another person. This matters little, as this weapon was rusty and the police eliminated the owner as a suspect.

**III**

The judgment of the District Court is affirmed.