**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1027

_____

LONDELL BOND,

Appellant

v.

SUPERINTENDENT DALLAS SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF PA;
THE ATTORNEY GENERAL OF THE STATE OF PHILADELPHIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-13-cv-01553)
District Judge: Honorable C. Darnell Jones, II

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on November 1, 2023

Before: JORDAN, ROTH and AMBRO, <u>Circuit Judges</u>

(Opinion: May 30, 2024)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**ROTH**, Circuit Judge

A jury convicted Londell Bond in state court of charges arising from a robbery and shooting in Philadelphia. Bond brings this petition for habeas corpus under 28 U.S.C. § 2254 alleging ineffective assistance of trial counsel.

I.      BACKGROUND

In November 2000, a man entered a Philadelphia bar shortly after midnight. He jumped on a chair, pulled out a gun, and shouted, "this is a holdup, don't nobody move!"[1] A patron, Edward Carter, tried to grab the man to stop him. The robber fired his gun, killing Carter. As the robber tried to flee, people in the bar, including Larry Lane, a patron, and William Ingram, the bar owner, fought to keep him from exiting. During the struggle, the bar patrons pulled off the robber's sweatshirt. The robber escaped in a getaway car.

Several individuals provided statements to the police, including Lane and Ingram. Lane had a clear, front-facing view of the robber during the altercation. However, no one was able to identify the robber at that time.

Nearly three years later, in 2003, police revisited the case and invited Lane to make an identification from an array of photos and an in-person lineup. Lane identified Bond as the robber in both the photo array and lineup. He said he was confident in his identification. Ingram was also invited to make an identification at the in-person line-up. He said Bond "looked familiar" but he "wasn't sure" whether Bond was in fact the robber.[2]

_____

[1] Appx 180–81, 185, 194.
[2] Appx 277, 291.

2

Police also discovered Bond's DNA on the sweatshirt recovered from the bar and his fingerprint on a lighter found in the sweatshirt's pocket.[3] The Commonwealth of Pennsylvania charged Bond with Carter's murder.[4]

At trial, the Commonwealth relied on eyewitness identifications, DNA, and fingerprints to prove that Bond committed the robbery. Lane was one of the witnesses who identified Bond as the robber. During his testimony, Lane referred three times to the photos from the photo array as "mug shots."[5] [6] [7] Bond's attorney never objected.

Bond offered an alibi defense and called his great-aunt, Diana Barnes, as a witness. Barnes testified that on the night of the murder, Bond was living with her in New York and working at a restaurant she managed. However, she provided no records of Bond's employment.

In under two hours, the jury found Bond guilty of second-degree murder, robbery, and possession of an instrument of crime.[8] Bond appealed on grounds not relevant to this

---

[3] In 2000, a fingerprint identification technician compared the fingerprint on the lighter to fingerprints in the automated identification system database and made no identification at that time. In 2003, detectives asked the technician to compare the fingerprint on the lighter to Bond's ten fingerprint card, which yielded a positive identification between the fingerprint on the lighter and Bond's middle finger. No other fingerprints were found on the lighter.

[4] Bond's first trial ended in a hung jury.

[5] Appx 219.

[6] Appx 235.

[7] Appx 237.

[8] Appx 477.

habeas petition, and the Pennsylvania Superior Court affirmed Bond's convictions, noting the "overwhelming evidence of guilt."[9]  The Pennsylvania Supreme Court denied review.[10]

Bond filed a petition for relief under Pennsylvania's Post Conviction Relief Act (PCRA), claiming that trial counsel performed ineffectively by failing to object, move for a mistrial, or ask for a cautionary instruction after Lane used the term "mug shots" to describe the photo array.  The PCRA court dismissed the petition without a hearing.  The Superior Court affirmed.  Bond then filed a pro se habeas petition in federal court raising the same arguments.  The Magistrate Judge concluded that the Pennsylvania courts reasonably determined that the references to "mug shots" were "passing references" that did not "reasonably imply that [Bond] had previously been convicted of a crime."[11]  As a result, Bond was not entitled to relief.[12]  The Magistrate Judge also recommended holding that trial counsel did not perform deficiently because Bond had not shown that he was prejudiced by the references to "mug shots."

The District Court adopted the report and recommendation, overruling Bond's objections.  It reiterated that Bond had not demonstrated that the references to "mug shots" prejudiced him, thereby failing to establish a claim for ineffective assistance of counsel.[13] Bond appealed.[14]

---

[9] Appx 111.
[10] *Commonwealth v. Bond*, 956 A.2d 431 (Pa. 2008) (unpublished).
[11] Appx 55.
[12] Appx 148–49.
[13] Appx 159.
[14] We granted a COA on one issue:  Bond's claim that trial counsel was ineffective for failing to object to Lane's references to "mug shots" making up the photo array from which he identified Bond.

## I. DISCUSSION[15]

Bond argues that, under *Strickland*, his trial counsel was ineffective for failing to object to Lane's references to "mug shots."[16] We review Bond's claim of ineffective assistance of counsel "[u]nder the double deferential judicial review that applies to a *Strickland* claim evaluated under the § 2554(d) standard."[17] Under *Strickland*, the defendant must demonstrate that counsel's performance was constitutionally deficient.[18] The defendant must also show that the deficient performance prejudiced him; that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[19]

For claims under § 2554(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which is "different from asking whether defense counsel's performance fell below *Strickland*'s standard."[20]

Here, we cannot say that the Superior Court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law."[21] "[N]o evidence [was] introduced [to show] that the photograph [Lane referred to] was evidence

---

[15] This is a habeas corpus case brought by an individual incarcerated in state prison, with federal jurisdiction arising under 28 U.S.C. §§ 2241 and 2254. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.

[16] Opening Br. 15 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

[17] *Davis v. Adm'r New Jersey State Prison*, 795 F. App'x 100, 102 (3d Cir. 2019) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[18] 466 U.S. at 687.

[19] *Id.* at 694.

[20] *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

[21] *Id.* at 103.

of prior criminal activity."[22]  The court thus concluded that the passing references to "mug shots" did not prejudice Bond and trial counsel was not ineffective for failing to object.[23] That analysis was not unreasonable.

Moreover, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."[24] We find no violation because Bond did not suffer prejudice.  Substantial evidence—the DNA on the sweatshirt, fingerprint on the lighter, and eyewitness identification— supported his conviction.[25]  Together, these pieces of evidence overcome Bond's weak alibi defense.  Because we "may begin and, when dispositive, end with either of *Strickland*'s two prongs," and we conclude that Bond was not prejudiced by the passing references to "mug shots," we need not address whether Bond's counsel performed deficiently.[26]

II.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's order denying Bond's petition for a writ of habeas corpus.

---

[22] Appx 119.

[23] Appx 24–28, 199.  Moreover, we cannot "reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  So, even if the Superior Court erred in holding that Pennsylvania law permits references to "mug shots," we could not grant relief.

[24] *Estelle*, 502 U.S. at 68. *Id.*

[25] *See Strickland*, 466 U.S. at 695; *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999).

[26] *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 477 (3d Cir. 2017).